741 P.2d 246

**UNITED SERVICES AUTOMOBILE ASSOCIATION, a foreign reciprocal international exchange, Plaintiff-Appellee,**

v.

**John I. MORRIS, Defendant-Appellant.**

**No. CV-86-0569-PR.**

Supreme Court of Arizona, En Banc.

June 16, 1987.

Reconsideration Denied Sept. 15, 1987.

Ridenour, Swenson, Cleere & Evans by Harold H. Swenson, Lloyd J. Andrews, Phoenix, for plaintiff-appellee.

Friedman & Ziskin by Charles I. Friedman, Ronald A. Spears, Phoenix, for defendant-appellant.

FELDMAN, Vice Chief Justice.

John I. Morris petitioned this court to review a memorandum decision of the court of appeals affirming a summary judgment in favor of plaintiff, United Services Automobile Association (USAA). The court of appeals held that USAA's insureds breached their contractual duty to cooperate with USAA by entering into a stipulated settlement, thereby discharging USAA from its responsibility to pay the resulting judgment. *United Services Automobile Association v. Morris*, No. 1 CA–CIV 8092 (Ariz.Ct.App. July 31, 1986) (memorandum decision).

We granted review to address questions of first impression: may insureds being defended under a reservation of rights enter into a settlement agreement without breaching the duty to cooperate and, if so, is the settlement binding on the insurer? *See* Rule 23(c), Ariz.R.Civ.App.P., 17A A.R.S. (Supp.1986). We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

## FACTS AND PROCEDURAL HISTORY

The trial court granted summary judgment in favor of USAA. Therefore, we view the record in the light most favorable to defendants. *See Farmers Insurance Co. of Arizona v. Vagnozzi*, 138 Ariz. 443, 448, 675 P.2d 703, 708 (1983).

On January 30, 1982, Morris broke into defendant Pamela Taylor's home. In fear, Taylor handed a gun to Robert Waltz, her brother, and told him to shoot Morris, but Waltz refused and tossed the gun on a bed. Waltz told police that he subsequently retrieved the gun and purposely shot Morris because he feared that Morris, enraged and out of control, would injure or kill the other occupants of the house.

In May 1982, Morris filed a tort action against Taylor and Waltz, alleging that he had been injured by their gross negligence and recklessness. Taylor carried homeowner's coverage with USAA, under which Waltz was an omnibus insured. The policy provided $100,000 liability coverage per occurrence with an exclusion for injuries "expected or intended by the insured." Notified of the action, USAA employee Daryl Geller interviewed Taylor and Waltz about the shooting incident. During these interviews, Geller obtained a signed "nonwaiver agreement" from Taylor, acknowledging that USAA was not waiving any policy or coverage defenses by investigating and defending the case. Either intentionally or through oversight, Geller failed to ask Waltz to sign a nonwaiver agreement.

USAA then retained attorney James M. Koontz to defend Taylor and Waltz. During a deposition, Waltz again stated that he shot Morris to stop him from harming Taylor and other occupants of the house. Shortly after this deposition, Morris moved to amend his complaint to include allegations that Waltz and Taylor had injured him intentionally.

Because the homeowner's policy would not indemnify the insureds for acts within the meaning of the intentional act exclusion, Koontz was faced with a conflict of interest between his clients and USAA. Koontz therefore requested that USAA retain another attorney to protect its own interests. The record is sketchy, but apparently while Morris's motion to amend the complaint to add the intentional tort theory was pending, Koontz verbally notified the attorney retained by USAA that the parties were negotiating a settlement.

On February 2, 1984, USAA warned Koontz that it would consider any settlement by the insureds a material breach of the policy conditions, releasing USAA from its duty to indemnify. Counsel wrote:

> Please be advised that USAA does not agree to either insured (Taylor or Waltz) allowing or in any way encouraging a judgment in any amount to be taken against them by the plaintiff.... Whereas we appreciate the advantages accruing to the insureds as a result of such a maneuver, it would deprive USAA of what I consider to be a very substantial probability of obtaining a defense verdict in the tort action.

USAA also stated that it was not estopped from asserting a policy defense because the company "has never done anything to waive any of its rights under the policy." In addition, it promised to file a declaratory judgment action within a week based on the intentional act exclusion:

> Obviously if the proposed amendments to the Complaint are granted, USAA *reserves all rights concerning defendant Waltz as well as defendant Taylor* concerning allegations of intentional acts.

(emphasis added).[1]

The following day, Taylor and Waltz followed Koontz's advice and settled the case. In exchange for a covenant not to execute against their assets, Taylor and Waltz stipulated to a $100,000 judgment to be collected solely from USAA. After this stipulation was entered, the trial court granted Morris's motion to amend the complaint to allege intentional acts.

On February 7, 1984, USAA filed this action seeking a declaration that it is not

---

1. The insurer's attorney also wrote:
   > You have indicated that you might feel ethically or morally compelled to advise the plaintiff's attorney that USAA does not agree to the judgment against the insureds as spelled out above. It is my opinion, as I told you over the phone on Feb. 2, 1984, that the plaintiff's attorney should be able to figure it out for himself and should not be told specifically one way or another what USAA's position is in that regard. Obviously, if he asks you that question directly, you have no choice but to disclose that information, but I do not feel that information should be volunteered.

obligated to pay the $100,000 judgment because (1) the insureds' actions were intentional and thus outside the policy's coverage, and (2) the insureds breached their contractual duty to cooperate. In summary judgment motions, Morris argued that because USAA failed to have Waltz sign a nonwaiver agreement, it is now estopped from asserting the intentional act exclusion. *Vagnozzi, supra.* Thus, Morris argued, USAA must pay the full amount of the judgment.[2]

In response to this argument, USAA contended that Waltz had reviewed the nonwaiver agreement signed by his sister and justifiably had assumed it applied to him also. USAA submitted an affidavit from Waltz confirming that this was his understanding and that he had been led to believe that USAA would not indemnify him if his acts were found to be intentional.

The trial court correctly found that genuinely contested issues of material fact precluded granting summary judgment on the intentional act exclusion issue.[3] However, the court granted summary judgment in favor of USAA on the ground that USAA was discharged from its duty to indemnify Taylor and Waltz because, by settling, they had breached their duty to cooperate.[4]

In its memorandum decision, the court of appeals adopted the trial court's analysis. According to the court of appeals, Taylor and Waltz breached the cooperation clause by settling over USAA's objection and "of course, without consulting the insurance company." Memo. decision at 4.

**2.** Taylor and Waltz answered the complaint pro se, but have not filed any other pleadings or briefs in this declaratory judgment action. Apparently, they are cooperating with USAA, which has filed several affidavits signed by them.

**3.** An act committed in self-defense may not be considered an intentional act within the meaning of the intentional act exclusion. *Fire Insurance Exchange v. Berray*, 143 Ariz. 361, 694 P.2d 191 (1984); *Transamerica Insurance Group v. Meere*, 143 Ariz. 351, 694 P.2d 181 (1984).

**4.** The policy states:
In case of an accident or occurrence, the insured shall perform the following duties that apply. You shall cooperate with us in seeing that these duties are performed:

## DISCUSSION

### A. *Was Waltz Being Defended Under Reservation of Rights?*

■ USAA acknowledges that Taylor was being defended under a reservation of rights, but now claims that Waltz was not and that this fact is relevant to determining the effects of Waltz's settlement agreement. An insurer with a coverage defense must defend its insured under a properly communicated reservation of rights or it will lose its right to later litigate coverage. *Vagnozzi*, 138 Ariz. at 448, 675 P.2d at 708, citing Restatement (Second) of Judgments § 58 (1982); 7C J. APPLEMAN, INSURANCE LAW AND PRACTICE § 4692, at 297 (1979); A. WINDT, INSURANCE CLAIMS AND DISPUTES: REPRESENTATION OF INSURANCE COMPANIES AND INSUREDS § 2.05, at 25 (1982). The trial court found that USAA had not reserved its rights because it failed to obtain a nonwaiver agreement from Waltz. This factual conclusion was incorporated into the parties' arguments and was not questioned by the court of appeals. The trial court's conclusion has two distinct ramifications. First, by unconditionally defending Waltz, USAA would have waived the intentional act coverage defense. *Vagnozzi, supra.* Second, if the company was defending Waltz unconditionally, the cooperation clause of the policy would have prohibited Waltz from settling the claim without the insurer's consent. *See Arizona Property*

a. give written notice to us or our agent as soon as practicable . . .
b. forward to us every notice, demand, summons or other process relating to the accident or occurrence;
c. at our request, assist in:
(1) making settlement; . . .
(3) the conduct of suits and attend hearings and trials; . . .
e. the insured shall not, except at the insured's own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of the bodily injury.

  \*   \*   \*   \*   \*   \*

No action shall be brought against us unless there has been compliance with the policy provisions.

& *Casualty Insurance Guaranty Fund v. Helme*, 153 Ariz. 129, 735 P.2d 451 (1987). This is so because the purpose of a cooperation clause is to prevent insureds from compromising a claim for which the insurer unconditionally has assumed liability under the policy, thus obviating, at least to the extent of the policy limit bargained for, the insured's exposure to personal liability. *Cay Divers, Inc. v. Raven*, 812 F.2d 866 (3rd Cir.1987).

■ The record unmistakably shows, however, that the trial court's finding that USAA had not reserved its rights against Waltz is clearly erroneous. *See Smith v. Melson*, 135 Ariz. 119, 121, 659 P.2d 1264, 1266 (1983) (trial court's findings of fact will be adopted on appeal unless they are clearly erroneous or unsupported by any credible evidence). The fact that Waltz did not sign the nonwaiver agreement does not mean as a matter of law that USAA was defending him unconditionally. First, a carrier need not reserve its rights immediately upon learning of a suit; it may subsequently reserve its rights upon learning new information that would provide a coverage or policy defense. A. WINDT, *supra* § 2.05, at 26. Second, it would have been illogical for USAA to reserve its rights as to Taylor and not as to Waltz, who did the actual shooting. Third, and most important, the intent of the parties— insurer *and* insured—must prevail. *Smith, supra.* USAA stated in its motions for summary judgment that it had reserved its rights as to Waltz and that Waltz understood that he was being defended under reservation. In an affidavit taken by USAA, Waltz acknowledged that he had known all along that USAA was reserving its rights. Thus, both insurer and insured acknowledged that USAA undertook the defense pursuant to a reservation of rights.

Finally, the day before Taylor and Waltz settled the case with Morris and while Morris's motion to amend the complaint was pending, USAA in writing expressly reserved its rights to claim the intentional act exclusion. *See ante.* Thus, the record plainly shows that the trial court's factual finding was erroneous. USAA unequivocally reserved its right to assert the intentional act exclusion as to both Taylor and Waltz.

Accordingly, we are presented with the following issues:

1. May two insureds, both being defended under a reservation of rights, protect themselves by entering into a settlement agreement without breaching the cooperation clause?

2. If so, is the settlement binding upon the insurance carrier?

## B. *Conflicting Interests*

■ Each party to a liability insurance contract assumes certain express obligations. The insurer expressly agrees to indemnify its insured if liabilities covered by its policy are established. It also expressly obligates itself to defend any claim potentially covered by the policy. The duty to defend may work to an insurer's disadvantage or benefit. On the one hand, the insurer must defend claims potentially not covered and those that are groundless, false, or fraudulent. *See* 7C J. APPLEMAN, *supra* § 4684, at 80–87. On the other hand, by defending all claims the insurer obtains the advantage of exclusively controlling the litigation. This control allows the insurer to obtain a fair adjudication of its liability and to protect itself against the possibility of an insured colluding with the injured party to the prejudice of the insurer. *Id.* § 4681, at 2–4.

■ When an insurer performs its contractual obligation to defend, the policy requires the insured to cooperate with the insurer. The insured must aid the insurer in the defense. He may not settle with the claimant without breaching the cooperation clause unless the insurer first breaches one of its contractual duties. *See Helme, supra* (anticipatory repudiation of duty to indemnify); *Damron v. Sledge*, 105 Ariz. 151, 460 P.2d 997 (1969) (breach of duty to defend); *State Farm Mutual Automobile Insurance Co. v. Paynter*, 122 Ariz. 198, 593 P.2d 948 (App.1979) (same). If the insurer performs its obligations, the cooperation clause applies with full force, and

118

settlement by the insured constitutes a breach of the policy. *See Helme, supra; Damron, supra; Paynter, supra.*

The question in this case is whether an insurer may assert the policy's cooperation clause to prevent insureds being defended under a reservation of rights from protecting themselves by settling. To resolve this issue, we examine the respective positions of the parties and the practical effect of the manner in which USAA is attempting to use the cooperation clause.

Faced with a potential coverage defense, USAA properly reserved its rights to later assert the policy's intentional act exclusion. *Vagnozzi*, 138 Ariz. at 448, 675 P.2d at 708. In so doing, USAA did not breach any of its policy obligations. *See Miller v. Shugart*, 316 N.W.2d 729, 733 (Minn.1982). On the other hand, while USAA did not "abandon" its insureds by breaching any policy obligation, neither did it accept full responsibility for their liability exposure. *Id.*

As a consequence of USAA's reservation of rights, Taylor and Waltz were placed in a precarious position. At trial, they faced the possibility of a jury verdict greater than their $100,000 policy limit [5] or, even if within the limit, one that might not be covered. We therefore agree with Morris that the insureds had the need to act reasonably to protect themselves from "the sharp thrust of personal liability." *Helme*, 153 Ariz. at 137, 735 P.2d at 459; *Damron, supra*. Naturally, USAA also realized that it was in its insureds' best interest to enter into a *Damron* -type agreement. *See ante.* However, USAA's position was that the cooperation clause gave it a right to force the insureds to reject any settlement, no matter how reasonable, risk trial, and place themselves at danger of a judgment larger than the policy limits or one that might not be covered.

In effect, such an interpretation of the cooperation clause hamstrings insureds while granting the insurer a double bite at

escaping liability. Only one trial outcome would be beneficial to both USAA and its insureds: a verdict against the claimant, Morris. If the verdict were in favor of Morris, however, USAA would have another chance at escaping the obligation to indemnify because it would be able to relitigate the intentional act exclusion coverage issue in a declaratory judgment action such as this. *Vagnozzi, supra.* In addition, absent bad faith conduct, USAA will never be at risk for more than its $100,000 policy limit. Thus, the insureds risk financial catastrophe if they are held liable, while the insurer may save itself by litigating both issues—the insured's liability and the coverage defense—and winning either.

A majority of courts resolve this type of conflict by permitting an insured to reject a defense offered under a reservation of rights. The insured thus forces the insurer to elect either to defend unconditionally or to refuse to defend at its peril. *See McGough v. Insurance Co. of North America*, 143 Ariz. 26, 691 P.2d 738 (App. 1984) (recognizing but rejecting majority rule); [6] *Continental Insurance Co. v. Bayless and Roberts, Inc.*, 608 P.2d 281 (Alaska 1980); *Norton v. Farmers Automobile Inter-Insurance Exchange*, 40 Cal.App.2d 556, 105 P.2d 136 (1940); *Boise Motor Car Co. v. St. Paul-Mercury Indemnity Co.*, 62 Idaho 438, 112 P.2d 1011 (1941) (insurance company must decide its position); *Three Sons, Inc. v. Phoenix Insurance Co.*, 357 Mass. 271, 257 N.E.2d 774 (1970); *Butters v. City of Independence*, 513 S.W.2d 418, 425 (Mo.1974) (in view of its attempt to reserve the coverage question, the insurer had no right to insist upon controlling the defense); 7C J. APPLEMAN, *supra* § 4686, at 175 (1979).

This solution puts an insurer honestly attempting to perform its duties between Scylla and Charybdis. The insurer must either give up its right to raise tenable coverage defenses or its right to insist on

5. On the record before us, that possibility seems less than overwhelming. In many cases, however, the possibility may be very high.

6. Our court of appeals in *McGough* rejected this majority rule as inconsistent with our holding

in *Vagnozzi*. 143 Ariz. at 33, 691 P.2d at 745. We do not read *Vagnozzi* so broadly as to preclude application of the majority rule in Arizona.

full application of the cooperation clause. *McGough,* 143 Ariz. at 33, 691 P.2d at 745, *citing Vagnozzi, supra.* An astute lawyer need but reject the offer of a defense under the reservation, forcing the insurer either to defend unconditionally or to turn the insured loose to go it alone. In the former event, the insurer loses the coverage defense; in the latter, the insured often settles with the claimant, who then attempts to find some method of binding the insurer by the settlement. *See Helme, supra.* Insureds' settlements often are motivated solely by their strongly-felt need for economic survival and the claimant's desire for a quick judgment that will enable him to get after what he perceives as the real business—collecting from the insurer. From a public policy standpoint, the result of such agreements is both unpredictable and often unfair to one side or the other.

The better result would permit the insurer to raise the coverage defense, and also permit an insured to protect himself from the risk of noncoverage or excess judgment, while at the same time protecting the insurer from unreasonable agreements between the claimant and the insured. This solution has been recognized by several decisions. In *Miller, supra,* the Minnesota court aligned itself with the majority, stating that an insurance carrier should not be allowed to insist upon exclusive control of the defense while reserving coverage issues. *Miller* held that the insurer cannot invoke its cooperation clause to forbid an insured facing a coverage defense from taking reasonable measures to protect himself from the hazards of his position. By raising the coverage defense, even in good faith, the insurer places the insured in a position where settlement may be necessary for his own protection rather than from a lack of cooperation with the insurer.

If, as here, the insureds are offered a settlement that effectively relieves [or limits their] ... personal liability, at a time when their insurance coverage is in doubt, surely it cannot be said that it is not in their best interest to accept the offer. Nor, do we think, can the insurer who is disputing coverage compel the

insureds to forego a settlement which is in their best interests.

*Miller,* 316 N.W.2d at 733–34; *accord Cay Divers,* 812 F.2d at 870 (No breach of the cooperation clause because insured's settlement does "nothing to compromise [insurer's] reserved right to contest coverage." Moreover, the insured "may have also benefited" the insurer if coverage is later determined adverse to insurer.); *Taylor v. Safeco Insurance Co.,* 361 So.2d 743 (Fla. App.1978).

■ We agree with these cases. The law distinguishes between an insurer's duties to defend and to pay. *Continental Casualty Co. v. Signal Insurance Co.,* 119 Ariz. 234, 238, 580 P.2d 372, 376 (App. 1978); 7C J. APPLEMAN, *supra* § 4682. An insurer that performs the duty to defend but reserves the right to deny the duty to pay should not be allowed to control the conditions of payment. The insurer's insertion of a policy defense by way of reservation or nonwaiver agreement narrows the reach of the cooperation clause and permits the insured to take reasonable measures to protect himself against the danger of personal liability. Accordingly, we hold that the cooperation clause prohibition against settling without the insurer's consent forbids an insured from settling only claims for which the insurer unconditionally assumes liability under the policy. *Cay Divers, supra; Taylor, supra.* Thus, an insured being defended under a reservation of rights may enter into a *Damron* agreement without breaching the cooperation clause. Such agreements must be made fairly, with notice to the insurer, and without fraud or collusion on the insurer. *Helme, supra.* The insurer's reservation of the privilege to deny the duty to pay relinquishes to the insured control of the litigation, almost as if the insured had objected to being defended under a reservation. *Taylor v. Safeco Insurance Co.,* 361 So.2d at 745–46.

Our inquiry is not over. Permitting the insured to settle with the claimant presents a great danger to the insurer. To relieve himself of personal exposure, the insured may be persuaded to enter into almost any

type of agreement or stipulation by which the claimant hopes to bind the insurer by judgment and findings of fact. Therefore, we still must determine whether USAA is bound by the settlement agreement or whether it may "relitigate" any aspect of the original tort claim.

## C. *Binding Effect of Settlement*

■ Taylor and Waltz stipulated that their actions during the shooting incident were *either* negligent or intentional; thus, despite the insured's settlement stipulations, the coverage issue is clearly unresolved and USAA may litigate it on remand. Morris presumably did not demand that Taylor and Waltz stipulate that their acts were negligent and thus covered because he knew that any stipulation of facts essential to establishing coverage would be worthless. *See Vagnozzi*, 138 Ariz. at 448, 675 P.2d at 708 (insurers are not even bound by *litigated* issues as to which there was a conflict of interest); *accord Butters*, 513 S.W.2d at 425–26. An insured's settlement agreement should not be used to obtain coverage that the insured did not purchase. *See* 7C J. APPLEMAN, *supra* § 4690, at 235. Morris, therefore, accepted the risk that the insureds' actions would be found intentional within the meaning of the exclusion, in which case he would have no source from which to recover.

USAA, however, wants to litigate more than just the coverage issue. Assuming that there was coverage and that Taylor and Waltz did not breach the duty to cooperate, USAA argued to the trial court that the settlement agreement should not be binding on USAA because it would have won the liability case at trial. USAA urged an absolute right to relitigate all aspects of the liability case, including liability and amount of damages. USAA's absolute position would destroy the purpose served by allowing insureds to enter into *Damron* agreements because claimants would never settle with insureds if they never could receive any benefit.

■ We recognize, however, that an insured being defended under a reservation might settle for an inflated amount or capitulate to a frivolous case merely to escape exposure or further annoyance. *Miller*, 316 N.W.2d at 734; *accord Taylor, supra.*

> Plainly, the [stipulated] "judgment" does not purport to be an adjudication on the merits; it only reflects the settlement agreement. It is also evident that, in arriving at the settlement terms, the [insureds] would have been quite willing to agree to anything as long as plaintiff promised them full immunity. The effect of the settlement was to substitute the claimant for the insureds in a claim against the insurer.

*Miller*, 316 N.W.2d at 735. *Miller* resolves this concern by holding that neither the fact nor amount of liability to the claimant is binding on the insurer unless the insured or claimant can show that the settlement was reasonable and prudent. *Id.* This accords with general principles of indemnification law. *See Industrial Indemnity Co. v. Beeson*, 153 Ariz. 317, 736 P.2d 800 (App.1986) (citing *Parfait v. Jahncke Service, Inc.*, 484 F.2d 296 (5th Cir.1973), *cert. denied*, 415 U.S. 957, 94 S.Ct. 1485, 39 L.Ed.2d 572 (1974)). An indemnitor is bound by the settlement made by its indemnitee if, but only if, the indemnitor was given notice and opportunity to defend. *Id.* By settling against the insurer's instructions, the insured, in effect, ousts the insurer from the defense of the action and assumes the defense himself. In such case, the indemnitor may contest its liability. *Beeson, supra; Vagnozzi, supra.* Failing in that, the indemnitor will be liable to the indemnitee to the extent that the indemnitee establishes that the settlement was reasonable and prudent under all the circumstances. *Beeson, supra; Miller, supra.* The indemnitee need not establish, however, that he would have lost the case; he need only establish that given the circumstances affecting liability, defense and coverage, the settlement was reasonable. *Id.*[7]

---

7. *See also Continental Insurance Co.*, 608 P.2d at 293 n. 20; *Trim v. Clark Equipment Co.*, 87 Mich.App. 270, 274 N.W.2d 33 (1978) (indemni- tee must show reasonableness of settlement in light of potential liability); *accord Plumbers Specialty Supply Co. v. Enterprise Products Co.*,

The test as to whether the settlement was reasonable and prudent is what a reasonably prudent person in the insureds' position would have settled for on the *merits* of the claimant's case. *Miller*, 316 N.W.2d at 735. This involves evaluating the facts bearing on the liability and damage aspects of claimant's case, as well as the risks of going to trial. *Id.; accord Taylor*, 361 So.2d at 747 (insurance company still can challenge the reasonableness of settlement amount); 7C J. APPLEMAN, *supra* § 4690, at 222–29 (action taken by insured must be reasonable); A. WINDT, *supra* § 5.16, at 212–13, and § 6.25, at 275–76.

## CONCLUSION

Thus, the trial court erred in holding that the mere making of the settlement agreement between Morris and the insureds was a breach of the cooperation clause. Finding themselves in a position of economic peril because the insurer had raised the coverage defense, the insureds had the right to make a reasonable, non-collusive settlement to protect themselves. On remand, the insurer is not bound by any factual stipulations and, under *Vagnozzi*, is free to litigate the facts of the coverage defense. If the insurer wins on the coverage issue, it is not liable for any part of the settlement. If it loses, it may or may not be bound by the amount of the judgment taken by Morris against Taylor and Waltz. Morris will have the burden of showing that the judgment was not fraudulent or collusive and was fair and reasonable under the circumstances. If Morris cannot show that the entire amount of the stipulated judgment was reasonable, he may recover only the portion that he proves was reasonable. A. WINDT, *supra* § 5.16, at 212–13. If he is unable to prove the reasonableness of any portion of the judgment, USAA will not be bound by the settlement.

The judgment of the trial court is reversed. The decision of the court of appeals is vacated. The case is remanded for proceedings consistent with this opinion.

GORDON, C.J., and CAMERON, J., concur.

MOELLER, J., did not participate in the determination of this matter.

HOLOHAN, Justice, dissenting.

This appeal was initially decided by the Court of Appeals by a memorandum decision. There was no new principle of law to be announced; the prevailing authority was *Damron v. Sledge*, 105 Ariz. 151, 460 P.2d 997 (1969), decided almost 20 years ago. The insurance company had complied with the rule adopted in *Damron*.

> Where the carrier sends its insured a notice that it is reserving its rights to contest liability for any judgment, and then goes ahead and defends the action, it is almost uniformly held that by this notice the company may defend and use its best efforts to prevent an excessive verdict, without thereby waiving its right to raise the question of liability under the terms of the policy at a later date.

*Damron*, 105 Ariz. at 155, 460 P.2d at 1001.

*Damron* held that an insured is generally freed from the obligations of the cooperation clause of the insurance contract when the insurer has breached its duty to defend or to indemnify. This rule was reaffirmed in our recent case of *Arizona Property & Casualty Insurance Guaranty Fund v. Helme*, 153 Ariz. 129, 735 P.2d 451 (1987).

The insurer in this case has not breached any of its obligations under the insurance contract. It has undertaken the defense of the insureds, and it was attempting to defeat the claim believing that there was "a very substantial probability of obtaining a defense verdict" in the action. If the insurer had been allowed to defend, a defense verdict would have been of mutual benefit to the insurer and the insureds.

The insurer raised the question of coverage, but it has never indicated that it has

---

96 N.M. 517, 632 P.2d 752 (App.1981); *see also Hawaiian Insurance & Guaranty Co. v. Higashi*, 67 Hawaii 12, 675 P.2d 767 (1984); *Morrissette*

*v. Sears, Roebuck & Co.*, 114 N.H. 384, 322 A.2d 7 (1974); 41 Am.Jur.2d *Indemnity* § 33, at 723–24 (1968).

concluded that there is in fact no coverage. *Damron* allows the insurer to take this position and not be in violation of the insurance contract.

Despite our past precedent, the court takes a new direction and concludes that an insured being defended under a reservation of rights may enter into a so-called *Damron* agreement without breaching the cooperation clause, provided the insured does so fairly, with notice to the insurer, and without fraud or collusion on the insurer. The basis for this new direction seems to rest on a particular concern for the insured despite the clear language of the insurance contract.

The new rule announced by the court is that the cooperation clause of the insurance contract prohibiting settlements without the insurer's consent forbids an insured from settling only claims for which the insurer unconditionally assumes liability under the policy. Two cases are cited in support of this proposition. At 119, 741 P.2d at 252. An analysis of the cited cases suggests that neither case is good precedent for the announced rule.

One of the cases cited by the court, *Taylor v. Safeco Insurance Co.*, 361 So.2d 743 (Fla.App.1978), involved an insured who refused to allow the insurer to defend the action after the insurer had disclaimed responsibility for any judgment in the action pending against the insured. A settlement was entered into by the insured without the consent of the insurer. The Florida court held that the insured could settle the case without the insurer's consent because the insured is not required to surrender control of the case against him to an insurer who denies liability or any judgment in the case. The cited case is an example of the majority rule which allows an insured to reject a defense offered under a reservation of rights. *See* at 118, 741 P.2d at 251.

*Cay Divers, Inc. v. Raven*, 812 F.2d 866 (3d Cir.1987), is also cited by the court in support of the new rule. A careful reading of the cited case indicates that it involves an insurer who was denying coverage under its policy for a claim made against its insured. The insured brought an action

against the insurer to establish coverage and to compel the insurer to defend. The insurer agreed to defend but under a reservation of right because the insurer was denying coverage. A reasonable settlement by the insured without consent of the insurer was held not to bar indemnification. Although there is language in the *Cay Divers* decision, 812 F.2d at 870, which states that the no settlement clause pertains to claims for which liability is assumed under the policy, the language is dicta and the case cited in support of the statement, *American Fire & Casualty Co. v. Kaplan*, 183 A.2d 914, 915 (D.C.Mun. App.1962), does not support the statement.

*American Fire & Casualty* is an example of a *Damron* situation in which the insurer denied coverage and refused to defend. The District of Columbia court held:

By rejecting an asserted claim and refusing to defend in the name of the policy-holder, the insurer's repudiation of its obligations under the policy operates to relieve the insured from the performance of provisions intended to protect the insurer if it honored its responsibility. The appellant cannot repudiate its obligations under this type of contract on the one hand and hold its insured to strict performance on the other. (Footnotes omitted)

*American Fire & Casualty*, 183 A.2d at 915–16.

*Cay Divers* is actually an example of that group of courts which permit insureds to settle even though their insurers were affording timely defenses but denying any liability under the insurance policies in question. *Great American Indemnity Co. v. City of Corpus Christi*, 192 S.W.2d 917 (Tex.Civ.App.1946); *Thomas W. Hooley & Sons v. Zurich General Accident & Liability Insurance Co.*, 235 La. 289, 103 So.2d 449 (1958); *Hawkeye Casualty Co. v. Stoker*, 154 Neb. 466, 48 N.W.2d 623 (1951); *See Sargent v. Johnson*, 551 F.2d 221 (8th Cir.1977).

It is conceded that the insurer in this appeal "did not breach any of its policy obligations." At 114, 741 P.2d at 247. Why shouldn't the insured be equally

bound to respect the terms of the contract? In *Rawlings v. Apodaca*, 151 Ariz. 149, 726 P.2d 565 (1986), this court indicated that there is in every insurance contract a covenant of good faith and fair dealing, implied in law, whereby each of the parties is bound to refrain from any action which would impair the benefits which the other had the right to expect from the contract or the contractual relationship.

Apparently, however, this court adopts the rationale of the Minnesota Supreme Court in *Miller v. Shugart*, 316 N.W.2d 729 (Minn.1982):

> This is not to say that Milbank's [Milbank Mutual Insurance Company] position is enviable. As the trial court observed, it had "serious doubts about the propriety of the procedure whereby the insurer is placed in a 'no-win' situation as was done here." If the insurer ignores the "invitation" to participate in the settlement negotiations, it may run the risk of being required to pay, even within its policy limits, an inflated judgment. On the other hand, if the insurer decides to participate in the settlement discussions, ordinarily it can hardly do so meaningfully without abandoning its policy defense. *Nevertheless, it seems to us, if a risk is to be borne, it is better to have the insurer who makes the decision to contest coverage bear the risk.* Of course, the insurer escapes the risk if it should be successful on the coverage issue, and, in that event, it is plaintiff who loses.

(emphasis supplied) *Miller v. Shugart*, 316 N.W.2d at 734.

The *Miller* court recognizes the danger of its position:

> Plainly, the "judgment" does not purport to be an adjudication on the merits; it only reflects the settlement agreement. It is also evident that, in arriving at the settlement terms, the defendants would have been quite willing to agree to anything as long as plaintiff promised them full immunity.

316 N.W.2d at 735.

But apparently the Minnesota Supreme Court felt it had provided a just remedy:

> In these circumstances, while the judgment is binding and valid as between the stipulating parties, it is not conclusive on the insurer. The burden of proof is on the claimant, the plaintiff judgment creditor, to show that the settlement is reasonable and prudent. The test as to whether the settlement is reasonable and prudent is what a reasonably prudent person in the position of the defendant would have settled for on the merits of plaintiff's claim. This involves a consideration of the facts bearing on the liability and damage aspects of plaintiff's claim, as well as the risks of going to trial.

*Id.*

*Sargent v. Johnson, supra,* provides a different viewpoint about the actions of insureds who undertake settlements which avoid all personal liability and shift the full consequences of the settlement on the insurer. The *Sargent* Court observed:

> This standard of good faith and mutual respect applies to both parties to the insurance contract. In this case, under the circumstances previously related, we must conclude that the insured's conduct in discharging defense counsel provided by the insurance carrier and entering into a settlement of the pending litigation without the insurer's consent, even with court approval, constituted a violation of terms of the existing policies. Moreover, the insured not only breached its contract, but acted in bad faith. Counsel for the insured did not enter into a bargain to settle its liability claims for a fair price, but entered into a questionable collaboration by which the parties maneuvered through terms of a settlement agreement to impose an uncompromised full balance of a judgment upon the insurer, while the insured incurred no real detriment. In light of the questionable validity of the judgment on its face, and the substantial sum obtained outright by Sargent from Ohman, this seems particularly unreasonable. This kind of bargain represents the antithesis of mutual respect for rights.

Haglin's breach of insurance policy provisions ... and its failure to deal with

**124**

Liberty in good faith, effectively severed the insured-insurer relationship.

*Sargent v. Johnson,* 551 F.2d at 232.

The insurance contract in this case defined the risk. If the acts of the insured come within the risk, the insurer is obligated to pay any judgment or settlement up to policy limits. If the acts of the insured do not come within the risk, the insurer is not obligated to pay. There is nothing unusual about such a situation nor is there anything unjust if there happens to be no coverage. The coverage question in an insurance policy is a matter of contract law, not social welfare. The insurer in this case has remained faithful to its obligations under the insurance contract, and it had a "reasonable expectation" that the insured would deal fairly with it and refrain from any action which would impair the benefits inherent in the contractual relationship.

Not only have the insureds violated the terms of the contract, they have entered a settlement which does not represent a fair disposition of their liability. It is in fact not a good faith settlement. I dissent.