*993 P.2d 1090*

**STATE of Arizona, and the Department of Administration, Plaintiffs–Appellants,**

**v.**

**Allen HEINZE, a married person; Colleen Schallock, a single person; Bertha A. Saunders, a married person, Defendants–Appellees.**

**No. 1 CA–CV 92–0410.**

Court of Appeals of Arizona, Division 1, Department D.

June 29, 1999.

As Amended July 7, 1999.

Review Denied Feb. 8, 2000.*

---

\* Chief Justice Zlaket recused himself and did not participate in the determination of this matter.

**128**

Janet A. Napolitano, The Attorney General by Thomas J. Dennis, Assistant Attorney General, Insurance Defense Section, Phoenix, Attorneys for Appellants.

Schleier, Jellison & Schleier, P.C. by Tod F. Schleier and Bradley H. Schleier, Phoenix, Attorneys for Appellee Colleen Schallock.

Dillingham & Cross, P.L.C. by John L. Dillingham, Phoenix, Attorneys for Appellee Bertha A. Saunders.

## OPINION

FIDEL, Presiding Judge.

¶ 1 The facts are fully presented in *State v. Schallock*, 189 Ariz. 250, 941 P.2d 1275 (1997), and we need not restate them in detail. It suffices by way of summary to indicate that the underlying declaratory judgment action presents the question whether the State must indemnify Allen Heinze for personal liability for his multiple acts of sexual misconduct and harassment toward Appellees Schallock and Saunders during the time Heinze served as executive director of the Arizona Prosecuting Attorneys Advisory Council (APAAC).

¶ 2 The evidence, when considered in a light most favorable to Schallock and Saunders, permits the conclusion that Heinze made offensive comments to them, subjected them to offensive physical contact, made quid pro quo sexual demands and, in Schallock's case, committed rape. The evidence also permits the conclusion that members of APAAC knew of Heinze's aggressive sexual behavior toward females subject to his supervision and that, instead of firing or reprimanding Heinze or curtailing his behavior, they "looked the other way."

¶ 3 The underlying suit does not concern the State's susceptibility to *direct* liability for Heinze's acts on theories such as negligent hiring, supervision, or retention. It concerns only the question whether the State must indemnify Heinze for his personal liability on the *vicarious* liability theories that he acted within either the scope of his employment or the scope of his authorization by the State.[1]

¶ 4 In *State v. Schallock*, our supreme court resolved certain issues and remanded others for decision by this court. The parties have stipulated that the following issues remain:

(1) Is the question whether Heinze acted within the scope of his authorization one of fact that must be remanded for determination in the trial court or one that, given the present record, should be resolved by summary judgment in favor of Appellees?

(2) Would the State's indemnification of Heinze be either unconstitutional or prohibited by Arizona public policy?

(3) Is indemnification prohibited under Arizona Revised Statutes Annotated ("A.R.S.") § 41–621(K) (1992)?

(4) Is indemnification prohibited under A.R.S. § 41–621(I) (1992)?

(5) Did Heinze forfeit indemnity by breaching his duty to cooperate under A.R.S. § 41–621(L) (1992)?[2]

---

1. Schallock went to trial and won verdicts against Heinze and APAAC (the State). The State defended Heinze pursuant to a reservation of rights. Schallock has now settled her direct liability claims with the State for $725,000. Schallock has given Heinze a covenant not to execute on the judgment against him, and Heinze has assigned Schallock his claim against the State for indemnification on that judgment. Saunders, like Schallock, brought claims against Heinze and both direct and vicarious liability claims against the State. She settled with Heinze and had not yet gone to trial against the State when the underlying declaratory judgment was entered.

2. The subsections that in 1992 were designated § 41–621(I), (K), and (L) are now designated (J), (L), and (M). *See* A.R.S. § 41–621 (1997). We will refer to the 1992 version of the statute in the course of this opinion.

(6) Are Appellees entitled to an award of attorneys' fees?

¶ 5 By stipulation the parties filed supplemental briefs on the first issue and submitted the others upon their prior briefs. We granted oral argument on the remanded issues and now resolve them as follows.

### I. SCOPE OF AUTHORIZATION

■ ¶ 6 The supreme court held that statutory indemnity for acts by state officers within "the course and scope of ... authorization" applies "to vicarious liability found outside [the] course and scope of employment." *Id.* at 261, 941 P.2d at 1286 (emphasis omitted). Should this court determine by summary judgment that Heinze acted within the scope of his authorization? We answer this question in the negative for the following reasons.

¶ 7 First, the supreme court assessed the current evidence of record as permitting, not requiring, a factfinder to find that Heinze acted within the scope of his authorization, just as it assessed the evidence as permitting, not requiring, a finding that Heinze acted within the scope of employment. *See, e.g., id.* at 257, 941 P.2d at 1282 (taking Appellees' cases at their strongest, as the court must on summary judgment, "we do not believe it can be said as a matter of law that Heinze was outside the course and scope of authority with regard to many or most of the incidents alleged by Saunders and Schallock"). *See also id.* at 259, 941 P.2d at 1284 ("[T]he Restatement factors that apply to the facts of this case create a jury question."); *id.* at 260, 941 P.2d at 1285 (comparable hostile environment cases "have found a jury question with regard to vicarious liability").

¶ 8 Second, as the supreme court illustrated by its quoted reference to "many or most of the incidents alleged," a factfinder might differentially resolve the question of scope of authorization with respect to different acts attributed to Heinze. That is, a factfinder might conclude that some of Heinze's acts fell within the scope of authorization and that others did not. Only after a factfinder completes such an assessment may damages be assessed for acts found within the scope of authorization. We are not equipped to conduct, nor does the record permit, such differential act-by-act assessment on appeal.

■ ¶ 9 Third, to govern this issue, the supreme court has articulated legal standards not previously adopted or applied in Arizona law. One is the RESTATEMENT (SECOND) OF AGENCY § 219(2)(d) standard that "deals with [a] master's vicarious liability for torts a servant was *empowered* to commit because of the master's delegation of authority." *State v. Schallock,* 189 Ariz. at 256, 261, 941 P.2d at 1281, 1286 (emphasis added). Another is that conduct committed by a state actor may fall within the scope of authorization if it is either of the same nature as that which is authorized *or* incidental to that which is authorized. *Id.* at 257, 941 P.2d at 1282 (citing RESTATEMENT (SECOND) OF AGENCY § 229(1)).

¶ 10 Although the trial court entered summary judgment for Appellees on the question of scope of employment, it did so on the ground of collateral estoppel. In defending the trial court's summary judgment on appeal, Appellees confined themselves to defending the application of collateral estoppel. Because the judgment on the ground of collateral estoppel has now been vacated by the supreme court, it would be unfair to deprive the State of the opportunity to make an evidentiary presentation geared specifically to scope of authorization under the supreme court's newly formulated standards.

¶ 11 For the foregoing reasons, we conclude that it would be procedurally inappropriate to summarily determine upon appeal that Heinze acted within the scope of his authorization.

### II. DOES THE GIFT CLAUSE OR PUBLIC POLICY PROHIBIT INDEMNIFICATION?

■ ¶ 12 Article 9, § 7 of the Arizona Constitution—known as the "gift clause"—prohibits "governmental bodies from depleting the public treasury by giving advantages to special interests, or by engaging in non-public enterprises." [3] *Wistuber v. Paradise Val-*

---

**3.** Article 9, § 7 provides:

Neither the state, nor any county, city, town,

**130**

ley Unified Sch. Dist., 141 Ariz. 346, 349, 687 P.2d 354, 357 (1984) (citations omitted); see also Gila Bend v. Walled Lake Door Co., 107 Ariz. 545, 549, 490 P.2d 551, 555 (1971).

¶ 13 The State asks us to determine by summary judgment that to indemnify Heinze with state funds for "personal losses resulting from rape or other sexual misconduct" would violate both the gift clause and public policy.

¶ 14 It is neither unconstitutional nor against public policy, however, to provide a fund of insurance to compensate persons injured by "acts or omissions of [government agents] while acting in authorized governmental or proprietary capacities." A.R.S. § 41–621(A)(3). Cf. St. Paul Fire & Marine Ins. Co. v. Asbury, 149 Ariz. 565, 567, 720 P.2d 540, 542 (App.1986) (Arizona public policy favors protecting the interests of injured parties); Ford v. Revlon, Inc., 153 Ariz. 38, 734 P.2d 580 (1987) (Feldman, J., concurring) (employer should remain financially responsible for the acts or omissions of its agents).

¶ 15 The State's argument accordingly fails because it is founded on an assumption that cannot survive the supreme court's decision in this case. Specifically, the State bases its argument upon the premise that Heinze acted outside the scope of his authorization in his conduct toward Appellees and that State indemnification would amount to granting him a subsidy of public monies to cover liability for his entirely private acts. The supreme court, however, has determined that a factfinder could find that Heinze acted within the scope of his authorization. See State v. Schallock, 189 Ariz. at 257–59, 941 P.2d at 1282–84. Because it offends neither the constitution nor public policy for the State to indemnify victims of actions taken by state employees within the scope of their

authorization, we decline to award the State summary judgment on this ground.

### III. DOES A.R.S. § 41–621(K) PROHIBIT INDEMNIFICATION?

#### A. Felony Conviction Is Not Prerequisite to § 41–621(K) Exclusion

¶ 16 A.R.S. § 41–621(K)(1) (1992) (now § 41–621(L)(1)) excludes from state insurance coverage

Losses that arise out of and are directly attributable to an act or omission determined by a court to be a felony by a state officer, agent or employee unless the state knew of the person's propensity for that action, except those acts arising out of the operation or use of a motor vehicle.

(Emphasis added.)

¶ 17 The parties agree that Heinze committed felonies against Appellees. Appellees argue, however, that the felony exclusion is applicable only to conduct that has resulted in a felony conviction in a criminal proceeding. Because Heinze was never prosecuted or convicted for his acts against Appellees, Appellees argue that the felony exclusion is inapplicable as a matter of law.

¶ 18 We disagree that a felony conviction is a prerequisite to the application of the felony exclusion. Tellingly, subsection (K)(1) does not specify that the state officer, agent, or employee must have been convicted of a felony. Nor does it specify that the loss to be excluded must arise from an act or omission determined to be a felony by a criminal court. According to the statute, any court may make the requisite determination.

¶ 19 In marked contrast to subsection (K)(1), many Arizona statutes pointedly make civil consequences flow from a felony conviction.[4] Other statutes loosen the requirement

4. See, e.g., A.R.S. § 4–202(D) (West Supp.1998) (precluding issuance or renewal of liquor license to any person convicted of a felony within five municipality, or other subdivision of the state shall ever give or loan its credit in the aid of, ... any individual, association or corporation, or become a subscriber to, or a shareholder in, any company or corporation, ... except as to such ownerships as may accrue to the state by operation or provision of law....

years of application); A.R.S. § 5–108(A)(5) (1995) (precluding Department of Racing or Arizona Racing Commission from approving or renewing a permit to conduct a racing meeting or a food and beverage concessionaire license upon finding substantial evidence that applicant has been convicted of a felony or a crime involving moral turpitude within the last five years); A.R.S. § 16–165(A)(4) (1996) (requiring the county recorder to cancel the registration of a registered voter upon conviction of a felony);

by permitting civil consequences to flow either from a felony conviction *or* from the admission that a felony, or the elements of a felony, have been committed.[5]

¶ 20 These statutes show that our legislature knows how to turn a consequence on a felony conviction when it wishes to do so. It did not do so in A.R.S. § 41–621(K)(1), and there is no reason to regard its choice as an oversight. Under the plain. wording of A.R.S. § 41–621(K)(1), it suffices for a civil court, in proceedings concerning the applicability of subsection (K)(1), to determine whether the losses in question have arisen out of and are directly attributable to a felonious act or omission by a state officer or agent. If they are so attributable, the statute excludes indemnification unless the State knew of the officer's propensity for such acts, a question to which we now turn.

### B. Neither the State Nor Appellees Are Entitled to Summary Judgment on Application of § 41–621(K) Exclusion

■ ¶ 21 We have rejected Appellees' claim that the felony exclusion is inapplicable to this case as a matter of law. We similarly reject the State's assertion that the felony exclusion is applicable as a matter of law.

¶ 22 The felony exclusion is inapplicable when it is proved that "the state knew of the person's propensity for [such] action." Here, there is evidence to support a jury determination that APAAC, a state entity, knew of Heinze's propensity. *See State v. Schallock*, 189 Ariz. at 258, 941 P.2d at 1283 ("A jury might well find that if APAAC was aware of the work environment Heinze created, it should have anticipated even the final sexual assaults and rapes with which Heinze is charged in these cases.").

¶ 23 Indeed, Appellees raise the further question whether the evidence *requires* the determination that APAAC knew of Heinze's propensities. For the reasons discussed in part I of this opinion, however, we regard this as a question inappropriate for summary resolution. Heinze is charged with numerous acts, and a factfinder might differentiate among them in resolving the question of his known propensity. The supreme court spoke in terms of what a "jury might well find" with respect to some of the incidents alleged, not what it must find with respect to all of

---

A.R.S. § 20–2508(B) (West Supp.1998) (requiring Department of Insurance to deny a certificate to a utilization review agent "who has been convicted of ... a felony"); A.R.S. § 21–201 (West Supp.1998) (excluding from right to serve as trial or grand juror, a person who has been convicted of a felony and not had civil rights restored); A.R.S. § 28–3153(A)(2) (West Supp.1998) (precluding issuance of class D or M driver's license or instruction permit to a person "who is under eighteen years of age and who has been tried in adult court and ... convicted of a felony offense in the commission of which a motor vehicle is used"); A.R.S. § 32–572(A)(2) (1996) (authorizing Cosmetology Board to take disciplinary action or refuse to issue or renew a license upon "conviction of a crime"); A.R.S. § 32–741(A)(1) (authorizing Arizona Board of Accountancy to suspend or revoke a certified public accountant's certificate for "[c]onviction of a felony under the laws of any state"); A.R.S. § 32–1204 (1996) (automatic removal of a Dental Board member upon conviction of a felony); A.R.S. § 32–2153(B)(2) (West Supp.1998) (authorizing Real Estate Commissioner to suspend or revoke a license when it appears that the holder has been convicted of a felony or of specified crime); A.R.S. § 32–3552(A)(4) (West Supp.1998) (authorizing Arizona Board of Respiratory Care to deny a license application or take disciplinary action if the licensee or applicant is "convicted of a felony that has not been set aside by the court.");

A.R.S. § 32–3631 (West Supp.1998) (certified appraiser's license may be revoked or suspended upon a "conviction, including a conviction based on a plea of guilty, of a crime which is substantially related to the qualifications ... of a person developing appraisals ... or convicted of any felony involving moral turpitude"); A.R.S. § 38–291(8) (1998) (public office shall be deemed vacant after "conviction of the person holding the office of a felony"); A.R.S. § 44–1627(H) (West Supp.1998) (precluding sheriff from issuing or renewing a pawnbroker's license to a person convicted of specified felonies within five years preceding application).

5. *See* A.R.S. § 23–619.01(B) (1995) (defining as " 'wilful or negligent misconduct connected with the employment' " the *"admission of or conviction for* any felony or crime related to the employer's business or to the employment") (emphasis added); A.R.S. § 36–2211(A)(2) (West Supp.1998) (authorizing medical director of emergency medical services to censure or place on probation an emergency medical technician or ambulance attendant for a "[c]onviction of, or a plea of guilty or no contest to *or admission in a court proceeding to* the elements of a felony or misdemeanor involving moral turpitude") (emphasis added).

them. *Id.* To any felonies for which the jury finds that the State knew of Heinze's propensities, the felony exception will not apply.

## IV. DOES A.R.S. § 41–621(I) PROHIBIT INDEMNIFICATION?

¶ 24 A.R.S. § 41–621(I) (1992) (now § 41–621(J)) states:

> A state officer, agent or employee, except as otherwise provided by statute, is not personally liable for an injury or damage resulting from his act or omission in a public official capacity where the act or omission was the result of the exercise of the discretion vested in him *if the exercise of the discretion was done in good faith without wanton disregard of his statutory duties.*

(Emphasis added.)

¶ 25 The State argues that A.R.S. § 41–621(I) prohibits coverage of Heinze's acts because "his acts were not done in good faith without wanton disregard of his statutory duties." The State claims in short that subsection (I) is an additional exclusion to the coverage otherwise provided by A.R.S. § 41–621(A)(3). However, subsection (I) does not say what the State asks us to construe it to say.[6]

¶ 26 The exclusions to A.R.S. § 41–621(A)(3) are explicitly set forth in A.R.S. § 41–621(K) (now § 41–621(L)). That provision, which we have discussed in part III of this opinion, excludes coverage for losses resulting from a state officer's felony or from contractual breaches. These are the *sole* exclusions to a statute that covers "acts or omissions of *any nature* [committed] while acting in authorized governmental or proprietary capacities and in the course and scope of employment or authorization." A.R.S. § 41–621(A)(3) (emphasis added). The State asks us to convert subsection (I) into a separate and additional exclusion. This we cannot do. We cannot "enlarge, . . . expand or extend a statute to matters not

falling within its express provisions." *State v. Anway,* 87 Ariz. 206, 209, 349 P.2d 774, 776 (1960).

¶ 27 Further, the State interprets subsection (I) in a manner inconsistent with subsection (K)(1), which excludes all felonies committed by state employees from coverage except those in which "the state knew of the person's propensity for [such] action." Within this "known-propensity" exception lies coverage for a range of felonious acts that might be performed in bad faith and with wanton disregard of a state employee's statutory duties. As long as the State is aware of an employee's propensity to commit a felonious act, loss resulting from that act is covered by the statute. A fundamental principle of statutory construction is to give each section meaning so that no part is rendered void, superfluous, contradictory or insignificant. *See Weitekamp v. Fireman's Fund Ins. Co.,* 147 Ariz. 274, 275, 709 P.2d 908, 909 (App. 1985). We decline to interpret subsection (I) in a manner that conflicts with subsection (K).

¶ 28 Finally, the State argues that subsection (I) must either be interpreted as a coverage exclusion or as a statement of immunity. The former interpretation makes more sense than the latter, the State suggests, because if intended as a statement of immunity, subsection (I) would have been placed in the chapter which specifically sets forth all immunities, A.R.S. § 12–820 *et seq.* The State adds that if subsection (I) were viewed as an immunity provision, it would immunize a far broader range of conduct than that which the legislature has expressly immunized in Title 12.

¶ 29 We note, however, that in exempting state officers and employees from personal liability under specified circumstances, subsection (I) includes the qualification, "except as otherwise provided by statute." This broad language prevents subsection (I) from conflicting with, or enlarging, the realm of

---

**6.** The State would have us judicially rewrite the statute to provide:

~~A~~ THE STATE SHALL NOT COVER a state officer, agent or employee~~, except as otherwise provided by statute, is not personally liable~~ for an injury or damage resulting from his act or omission in a public official capacity where the act or omission was the result of the exercise of the discretion vested in him if the exercise of the discretion was done in ~~good~~ BAD faith ~~without~~ wanton disregard of his statutory duties.

immunity established in § 12–820 *et seq.* Accordingly, subsection (I) may be harmonized with the immunities provided in Title 12 without taking the step the State urges and twisting it into an exclusion.

¶ 30 In summary, we find that coverage for ·Heinze's acts is not prohibited by subsection (I).

## V. DID HEINZE FORFEIT INDEMNITY BY BREACHING HIS DUTY TO COOPERATE?

¶ 31 A.R.S. § 41–621(L) (1992) provides that all state employees insured under the statute "shall cooperate fully with the attorney general and department of administration in the defense of claims arising pursuant to this chapter." The State claims that Heinze breached this duty of cooperation by entering into a settlement agreement with Schallock "which was designed to inflate the jury verdict."

¶ 32 On the weekend before the trial, Heinze entered into a "high-low" agreement ($1,500,000/$750,000) concerning any judgment that Schallock recovered against him. In other provisions, Schallock agreed not to execute or enforce such a judgment personally against Heinze, Heinze agreed to invoke his Fifth Amendment privilege in response to questions regarding Schallock's sexual harassment claim, Heinze agreed to absent himself from the courtroom while Schallock testified, and Heinze agreed to waive his right to appeal.

¶ 33 The State had previously advised Heinze that it was defending him under a reservation of rights concerning coverage. This reservation of rights entitled him, notwithstanding his duty to cooperate, to enter a settlement agreement to protect himself. "An insurer that performs the duty to defend but reserves the right to deny the duty to pay should not be allowed to control the conditions of the payment." *United Serv. Auto. Ass'n v. Morris,* 154 Ariz. 113, 119, 741 P.2d 246, 252 (1987).

¶ 34 The State, of course, retained the ability to contest the reasonableness of any settlement that Heinze entered. *Id.* at 120, 741 P.2d at 253. But the trial court found the settlement reasonable, and we find no basis to substitute our judgment for that assessment.

¶ 35 The trial court also observed, in assessing Heinze's defense at trial, "that both Heinze and APAAC fought like cornered tigers from the beginning to the end of the Schallock case and counsel for both exerted extreme effort to avoid liability with Heinze joining in practically every APAAC defense, motion and tactic." This does not describe a collusive defense.

¶ 36 Appellants contend, nonetheless, that the Heinze–Schallock agreement was designed to inflate the jury verdict by obliging Heinze to take the Fifth Amendment while permitting Schallock's attorney to comment on Heinze's failure to testify at trial. As Schallock points out, however, (1) Heinze had established his intention to invoke the Fifth Amendment before entering into the agreement with Schallock, and (2) Schallock's attorney could have commented on Heinze's invocation of the Fifth Amendment even in the absence of the agreement. *See Buzard v. Griffin,* 89 Ariz. 42, 48, 358 P.2d 155, 158 (1960) (allowing a civil factfinder to infer the truth of misconduct alleged against a litigant who invokes the Fifth Amendment).

¶ 37 In short, the State presents no basis for a finding that the Heinze–Schallock settlement agreement was unreasonable given the State's reservation of rights and the merits of Schallock's case. *See Morris,* 154 Ariz. at 121, 741 P.2d at 254. Its argument that Heinze breached his duty to cooperate by "the nature of [his] settlement agreement" therefore fails.

## VI. ATTORNEYS' FEES

¶ 38 A.R.S. § 12–348 provides that a court shall award fees to a party who "prevails by an adjudication on the merits" against the State. Schallock and Saunders have not yet prevailed in an adjudication on the merits. If they· ultimately do so, they may include in their application to the trial court a request for fees incurred on appeal.

## VII. CONCLUSION

¶ 39 We reverse the trial court's grant of declaratory judgment in favor of Appellees on the indemnification issue and remand for proceedings consistent with this decision and that of our supreme court.

CONCURRING: RUDOLPH J. GERBER, Judge, and SARAH D. GRANT, Judge.