F.3d 1098, 1105 (9th Cir.2003), *cert. denied,* 545 U.S. 1139, 125 S.Ct. 2956, 162 L.Ed.2d 887 (2005).

Finally, Mrs. Huntsinger's fourth claim against the Shaw Group for failure to provide information required by ERISA was barred by the order of the Bankruptcy Court for the District of Delaware, Case No. 02–10118(MFW). The Bankruptcy Court had subject matter jurisdiction over successor liability claims against the purchaser of the IT Group's assets because those claims were conceivably related to administering the debtor's chapter 11 reorganization. 28 U.S.C. § 1334(b); 28 U.S.C. § 157(a); *see Celotex Corp. v. Edwards,* 514 U.S. 300, 307–10, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995); *In re Fietz,* 852 F.2d 455, 457 (9th Cir.1988). Mrs. Huntsinger's due process rights were not violated by the Bankruptcy Court proceeding because she was provided constructive notice through publication in the *Wall Street Journal. See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 317, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (approving constructive notice by publication to those parties "whose interests or whereabouts could not with due diligence be ascertained"). Actual notice was impossible as neither the IT Group nor the Shaw Group was aware of Mrs. Huntsinger's allegations of ERISA violations.[1] Mrs. Huntsinger's arguments challenging the propriety of the bankruptcy court order pursuant to 11 U.S.C. §§ 105(a), 363(f) and 524(e) constitute an impermissible collateral attack against that order. *See Celotex Corp.,* 514 U.S. at 306, 314, 115 S.Ct. 1493. Only those aspects of a court's order which underlie finality may be challenged on collateral review. *See id.* at 313, 115 S.Ct. 1493; *Spartan Mills v. Bank of*

Am., Ill., 112 F.3d 1251, 1255 (4th Cir. 1997). Accordingly, the decision of the district court is **AFFIRMED.**

**SWA PAINTING, INC.,**
Plaintiff–Appellee,

v.

**GOLDEN EAGLE INS. CO.,**
Defendant–Appellant.

No. 06–15817.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 12, 2008.

Filed Feb. 26, 2008.

---

Michael James Ryan, Esq., Diana Day, Esq., Broening Oberg Woods & Wilson, Phoenix, AZ, for Plaintiff–Appellee.

Randall H. Warner, Esq., Neil Singh, Esq., Jones Skelton & Hochuli, PLC, Phoenix, AZ, for Defendant–Appellant.

Before: THOMAS and BYBEE, Circuit Judges, and BLOCK,* District Judge.

## MEMORANDUM **

Golden Eagle Insurance Company ("Golden Eagle") appeals from the district court's order granting summary judgment to SWA Painting ("SWA") on the grounds that: (1) the commercial general liability insurance policy (the "Policy") entered into between Golden Eagle and its insured, Coating Management Systems ("CMS"), a manufacturer and vendor of paint, covered and did not exclude losses resulting from CMS selling defective paint to SWA, a painting contractor; and (2) Golden Eagle was not entitled to challenge the reasonableness of a stipulated settlement entered into between CMS and SWA. We reverse and remand to the district court with the instruction to enter judgment for Golden Eagle dismissing the complaint.

## I

We need not decide whether application of defective paint physically injures the walls and/or homes on which the paint was applied under Arizona law because the Policy defines "property damage" to include "[l]oss of use of tangible property that is not physically injured," Policy § V.15, and the parties do not dispute that homeowners lost use of their homes while the walls were repainted; thus, the losses incurred by CMS were covered under the "property damage" clause of the Policy.

However, the Policy excludes " '[p]roperty damage' to 'impaired property' . . . arising out of [a] defect, inadequacy or dangerous condition in 'your product' or 'your work.' " Policy § I.A.2.m. Under the Policy, " '[i]mpaired property' means tangible property . . . that cannot be used or is less useful because [i]t incorporates 'your product' or 'your work' that is known or thought to be defective . . . if such property can be restored to use by [t]he repair, replacement, adjustment or removal of 'your product' or 'your work'." *Id.* at § V.7.

Clearly the homes are tangible property and, at a minimum, they were less useful because of CMS's defective paint; thus, the only issue is whether, as argued by Golden Eagle, the homes were restored to use by repair *or* replacement of CMS's product, namely the defective paint. In

---

* The Honorable Frederic Block, Senior United States District Judge for the Eastern District of New York, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

this regard, SWA argues that the defective paint has not been repaired or replaced because: (1) the defective paint still sits on the walls, (2) sealant had to be used prior to application of the new paint, and (3) the new paint was not supplied by CMS.

We need not consider whether the defective paint was repaired because the plain and ordinary meaning of the term "replace" is dispositive. *See Liristis v. Am. Family Mut. Ins. Co.*, 204 Ariz. 140, 61 P.3d 22, 25 (2002) ("We construe provisions of an insurance policy according to their plain and ordinary meaning.").

The *Merriam–Webster Dictionary* (the *"Dictionary"*) defines the word "replace" as "1: to restore to good condition esp[.] by replacing parts or putting together something torn or broken[;] 2: to take the place of; supplant [;] 3: *to put something new in the place of." Dictionary* at 593 (Henry Bosley Woolf ed., Simon & Schuster, Inc.1974) (emphasis added).

Here, the homes were restored to use by replacement of the defective CMS paint with sealant and new paint, which "put something new in the place of" the defective paint. Replacement does not require that the defective paint be removed from the walls; nor does it preclude use of a sealant. Furthermore, neither the Policy nor the ordinary meaning of "replace" requires the defective CMS paint to be replaced by new CMS paint, as opposed to another brand.

## II

Consideration of Golden Eagle's ability to challenge the reasonableness of the stipulated settlement is unnecessary because it is not liable for any part of the settlement between SWA and CMS. *See United Servs. Auto. Ass'n v. Morris*, 154 Ariz. 113,

741 P.2d 246, 254 (1987) (*en banc*) ("If the insurer wins on the coverage issue, it is not liable for any part of the settlement.").

**REVERSED AND REMANDED WITH INSTRUCTIONS TO ENTER JUDGMENT FOR GOLDEN EAGLE.**