985 P.2d 616

**Miles E. MUNZER and William A. Munzer, Plaintiffs–Appellees,**

**v.**

**Stephen FEOLA and Mary L. Feola, husband and wife; David P. Dannacher and Linda Dannacher, husband and wife; Smith & Feola, P.C., an Arizona professional corporation, Defendants–Appellees,**

**Admiral Insurance Company, Intervenor–Appellant.**

**No. 1 CA–CV 98–0177.**

Court of Appeals of Arizona, Division 1, Department D.

Jan. 28, 1999.

Review Denied Sept. 21, 1999.

Teilborg, Sanders & Parks, P.C. by Steven Plitt and Valerie Fasolo, Phoenix, for Intervenor–Appellant.

Broening, Oberg, Woods, Wilson & Cass by Donald Wilson, Jr., Bruce M. Preston and J. Greg Coulter and Law Offices of Ronald A. Spears by Ronald A. Spears, Phoenix, for Plaintiffs–Appellees.

**OPINION**

KLEINSCHMIDT, Judge.

¶ 1   This case concerns the respective rights of an insurer and its insured when the insurer defends some, but not all, of the claims against the insured under a reservation of rights.

¶ 2   The case arose as follows.   The plaintiffs, Miles and William Munzer, owned a metal plating business in Scottsdale, Arizona. In 1986 they sold the business to Gerald Glassman, and two years later the Environmental Protection Agency notified the Munzers, Glassman, and others that they might be liable for groundwater contamination that had occurred in the area.

¶ 3   The law firm of Smith & Feola represented the Munzers in connection with the EPA's investigation of the environmental problem.   The firm dealt with the EPA and with other parties, including Motorola, which were also potentially responsible for the pollution.

¶ 4   The Munzers had comprehensive general liability insurance polices issued by three different companies.   An attorney who was

representing Motorola and some of the other potentially responsible parties reviewed the Munzers' policies and concluded that they did not provide coverage for any liability that might ensue from any claim for environmental damage. The EPA and the Department of Justice reached the same conclusion. Stephen Feola, one of the partners who was handling the Munzers' case, reached the same conclusion. He based his conclusion on the pollution exclusion in the policies, and he also believed that coverage was excluded under the intentional acts exclusion because Miles Munzer had told him that the Munzers had deliberately dumped chemicals on their property.

¶ 5 Feola and the Munzers discussed whether to file a claim with their general liability insurers. They talked about Feola's opinion and the opinion of other counsel, as well as the fact that the Munzers had dumped chemicals on the property. The Munzers instructed Feola not to file any claims, because, among other things, they were concerned about incurring additional expenses, especially legal fees in the event they were unsuccessful.

¶ 6 Sometime in 1994, at the behest of William Munzer's son who worked in the insurance industry, the Munzers told Smith & Feola to write to the Munzers' liability carriers and demand a defense and coverage for the environmental claims. The Munzers then replaced Smith & Feola with other counsel. The liability carriers, citing several provisions in the policies including pollution exclusions, denied that they had a duty to defend or indemnify the Munzers for the environmental claim.

¶ 7 The Munzers sued their liability carriers, asserting a breach of the terms of the insurance contracts and bad faith. They sought $185,670 in compensatory damages as well as punitive damages, damages for emotional distress, and for attorneys' fees. This suit was settled in 1996 for $85,000.

¶ 8 The Munzers then filed a complaint against Smith & Feola and its individual partners, alleging that the firm had committed malpractice by failing to timely tender a defense of the environmental claims to the Munzers' liability carriers. The Munzers sought $239,268 in general damages and $229,641 for the return or reimbursement of attorneys' fees they had paid Smith & Feola for work that the firm had done in connection with the environmental claim.

¶ 9 Smith & Feola demanded that its malpractice carrier, Admiral Insurance Company, defend and indemnify it and its partners for any judgment entered against them in the malpractice action. Admiral believed that there was a question as to whether the Munzers' suit triggered the pollution exclusion clause in its policy, and also had a question as to whether the return or forfeiture of fees by Smith & Feola came within the policy definition of damages insured against. Admiral originally offered to defend with a reservation of rights as to all claims. It partially withdrew that reservation of rights with respect to the claim for general damages, but it continued to assert the reservation of rights for any damages that represented a return of attorneys' fees paid to Smith & Feola for work they did on the environmental case.

¶ 10 In July of 1997, Admiral filed a declaratory judgment action against the Munzers and the other parties, alleging that the attorneys' fees the Munzers sought from Smith & Feola in the Munzers' malpractice action were not covered under the policy. The declaratory judgment action is still pending.

¶ 11 Sometime in 1997, the Munzers and Smith & Feola began negotiating a so-called *Morris* agreement. In general terms, a *Morris* agreement, first approved in the case of *United Services Automobile Ass'n v. Morris,* 154 Ariz. 113, 741 P.2d 246 (1987), allows a plaintiff and defendant, whose insurer will only defend under a reservation of rights, to agree that judgment may be entered against the defendant in a specified amount with the understanding that the plaintiff will not execute on the judgment against the defendant. The plaintiff is free to proceed against the defendant's insurer, and if the plaintiff prevails on the coverage issue, it may collect its judgment from the insurer to the extent that the judgment is what a reasonable and pru-

dent defendant would have paid to settle the case.

¶ 12 When Admiral received notice that the Munzers and Smith & Feola were considering a *Morris* agreement, it advised Smith & Feola that since Admiral was defending under a reservation of rights as to only one claim for relief, a *Morris* agreement would deprive it of its contractual rights to fully defend against the claims for which it acknowledged coverage. Admiral contended that this would be a breach of the clause in the policy that required the insureds to cooperate with the insurer in the defense of the claims.

¶ 13 A few months later, the Munzers and Smith & Feola did enter into a settlement of all claims. Smith & Feola allowed judgment to be entered against it for $389,909, which was approximately all of the Munzers' alleged damages less the $85,000 the Munzers had received from their general liability carriers. The Munzers lodged the judgment and, as required by *Morris,* requested the court to determine that it was reasonable.

¶ 14 Admiral was permitted to intervene in the malpractice suit between the Munzers and Smith & Feola for the purpose of contesting whether the settlement was reasonable. Admiral requested the court to set a scheduling conference and served a request for production of documents on the Munzers and on Smith & Feola. The Munzers and Smith & Feola objected to the request for production, claiming that the documents sought did not bear on the reasonableness of the agreement. Admiral also filed a motion for partial summary judgment, alleging that there was no causal connection between Smith & Feola's failure to make a timely demand on the Munzers' general liability carriers and the Munzers' damages.

¶ 15 The trial court refused to entertain Admiral's motion for partial summary judgment on the issue of causation, and it would not allow Admiral to conduct discovery related to that issue. Nor would the trial court allow Admiral to conduct discovery into Smith & Feola's representation of the Munzers, the underlying environmental litigation between the Munzers and their liability carri-

ers, or whether the Munzers' comprehensive general liability policies provided coverage for the environmental claims against the Munzers. The court also precluded Admiral from conducting discovery on the reasonableness of the fees that Smith & Feola had received, ruling that none of these issues were germane to whether the *Morris* agreement was reasonable and prudent.

¶ 16 Following another hearing, the trial court ruled that the settlement entered into under the *Morris* agreement was reasonable. The trial court also denied Admiral's motion for partial summary judgment on the causation issue, finding that it went beyond the scope of the order allowing Admiral to intervene.

## THE *MORRIS* AGREEMENT IS VALID ONLY AS TO THE CLAIMS FOR WHICH THE INSURER RESERVED ITS RIGHTS

¶ 17 This is a case of first impression in Arizona. It is, however, largely governed by the policies laid down in *United Services Automobile Ass'n v. Morris,* so that a more detailed examination of that case is necessary. 154 Ariz. 113, 741 P.2d 246 (1987).

¶ 18 In *Morris,* the plaintiff was an intruder in the defendant's sister's home. The defendant, fearing that the plaintiff would harm someone, shot the plaintiff when he, the plaintiff, became enraged and out of control. The plaintiff sued the defendant and his sister, and their homeowner's carrier, asserting that the intentional act exclusion precluded coverage, defended under a reservation of rights. *Id.* at 115, 741 P.2d at 248.

¶ 19 Over the objection of the insurance company, the plaintiff and the defendants entered into a settlement. In exchange for a covenant not to execute, the defendants allowed the plaintiff to enter judgment against them in the amount of $100,000, which was to be collected solely from the insurance company. *Id.*

¶ 20 The insurance company filed a declaratory judgment action seeking a declaration that it was not obliged to pay the $100,000 because (1) the defendant's conduct fell

within the intentional act exclusion, and (2) by entering into the settlement the insureds breached their contractual duty to cooperate with the insurance company in the defense of the case. The trial court granted summary judgment for the insurance company and the court of appeals affirmed. *Id.* at 115–16, 741 P.2d at 248–49.

¶ 21 The Arizona Supreme Court reversed, holding that the insurer could not invoke the cooperation clause to prevent the insureds from settling the case. *Id.* at 119, 741 P.2d at 252. It noted that the insureds, against whom rights were reserved, were exposed to financial ruin from which they were entitled to protect themselves by settling with the plaintiff. It went on to observe, however, that such a settlement placed the insurer in the dilemma of either giving up its coverage defense or surrendering its right to insist on the full application of the cooperation clause. *Id.* at 118–19, 741 P.2d at 251–52. The court, relying on a Minnesota case, *Miller v. Shugart,* 316 N.W.2d 729 (Minn.1982), concluded:

> The better result would permit the insurer to raise the coverage defense, and also permit an insured to protect himself from the risk of noncoverage or excess judgment, while at the same time protecting the insurer from unreasonable agreements between the claimant and the insured.

154 Ariz. at 119, 741 P.2d at 252. The court held that the insured had not breached the cooperation clause by settling with the plaintiff and that the insurance company remained free to litigate the coverage defense. If the insurance company prevailed on the coverage defense, it would not be liable for any part of the judgment entered pursuant to the settlement. If it did not prevail on the coverage defense, it would be bound by the judgment if the insured could show that the settlement was not the product of fraud or collusion and that it was a reasonable and prudent settlement. The test for determining whether such a settlement is reasonable and prudent is "what a reasonably prudent person would have settled for on the *merits* of the claimant's case. This involves evaluating the facts bearing on the liability and damage aspects of claimant's case, as well as the risks of

going to trial." 154 Ariz. at 121, 741 P.2d at 254. The supreme court remanded the case for further proceedings.

¶ 22 Admiral argues that *Morris* does not work well in cases in which there is only a partial reservation of rights. It suggests that it would be equitable to permit *Morris* agreements to apply to those claims to which an insurer defends under a reservation of rights, and not as to those claims which the insurer agrees to defend and indemnify.

¶ 23 The Munzers and Smith & Feola argue that when Admiral reserved its rights as to the issue of the return of the attorneys' fees that the Munzers had paid, from the Munzers' point of view, Admiral's coverage was illusory. They say that Admiral cannot pick and choose between the claims that it will defend without reservation and those as to which it will reserve its rights. To allow this, they argue, would give insurers an unfair advantage because "[i]t would be only a short time before insurance companies would regularly evaluate their policies as covering only the narrowest causes of action and the smallest damages."

¶ 24 There are two problems with the argument that the Munzers and Smith & Feola make. First, there was nothing illusory about Admiral's offer to defend and indemnify Smith & Feola on the Munzers' claim for general damages. That claim, at least in the view of the Munzers and Smith & Feola, amounted to $239,268. While it is true that Smith & Feola might be liable for the return of $229,641 in attorneys' fees, the insurer stood ready to pay more than half of the claim against them. Second, we believe that the fear of insurers narrowing their evaluations of coverage if they can defend with a reservation of rights as to some, but not all, claims is exaggerated. An insured's right to enter into a *Morris* agreement as to those claims defended under a reservation of rights will remain a powerful incentive for insurance companies not to abuse their coverage evaluations.

¶ 25 There is one case from another jurisdiction that deals peripherally with the question presented here. In *Steen v. Underwriters at Lloyds,* 442 N.W.2d 158 (Minn.Ct. App.1989), the claimant sued a brokerage

firm for fraud and misrepresentation, negligence, and willful and reckless disregard of an investor's rights in connection with the sale of a franchise agreement. Based on exclusions in the policy, the insurer defended under a reservation of rights as to any judgment for punitive damages or one based on fraudulent misrepresentations. *Id.* at 159. The claimant and the defendant entered into what the Minnesota courts call a Miller–Shugart agreement which is essentially the same thing as a *Morris* agreement. *See Miller,* 316 N.W.2d at 732. By stipulation, the defendant's alleged negligence was the only basis for the judgment entered pursuant to the agreement. When the claimant sought to collect the judgment entered pursuant to the settlement, the insurer refused to pay, contending that the insured had breached the cooperation clause on the insurance contract. *Id.* at 160.

¶ 26  The Minnesota Court of Appeals said that under these circumstances, where "the only possible reason(s) for liability were at issue ... the balance weigh[ed] in favor of finding the duty to cooperate as prevailing ...," 442 N.W.2d at 162, and found that the insured had breached the cooperation clause of the insurance contract, voiding coverage under the policy.

¶ 27  *Steen* is not as helpful as it otherwise might be because, although it began in a posture similar to the case before us, it evolved into a settlement that was based entirely on a claim as to which the insurer had agreed to indemnify the insured. Accordingly, the court in *Steen* had no need to consider the pros and cons of validating a *Morris*-type agreement to some claims and not as to others.

■ ¶ 28  We conclude that, as to the claim for general damages, Smith & Feola breached the cooperation clause of the insurance contract and voided the policy. Consequently, Admiral is not liable for general damages to the Munzers, and this issue need not be addressed on remand.

■ ¶ 29  As to the damages with respect to the attorneys' fees paid to Smith & Feola, the *Morris* agreement is valid. To paraphrase *Morris:*

If the insurer wins on the coverage issue, it is not liable for any part of the settlement. If it loses, it may or may not be bound by the amount of the judgment taken by [the Munzers] against [Smith & Feola]. [The Munzers] will have the burden of showing that the judgment was not fraudulent or collusive and was fair and reasonable under the circumstances. If [the Munzers] cannot show that the entire amount of the stipulated judgment was reasonable, [they] may recover only the portion that [they] prove[ ] was reasonable.

154 Ariz. at 121, 741 P.2d at 254.

¶ 30  It is worth noting that, contrary to Admiral's suggestion, the reasonableness of the fees that the Munzers paid Smith & Feola is not the issue. It is undisputed that the amount was paid and accepted. What is at issue is the reasonableness of the settlement that provided for a return of those fees when there was a substantial dispute as to whether the Munzers could prevail against Smith & Feola on the malpractice claim.

■ ¶ 31  The test to determine whether a settlement is reasonable is "what a reasonably prudent person in the insureds' position would have settled for on the *merits* of the claimant's case. This involves evaluating the facts bearing on the liability and damage aspects of claimant's case, as well as the risks of going to trial." *Morris,* 154 Ariz. at 121, 741 P.2d at 254. Therefore, the trial judge must consider all relevant evidence pertaining to the possibility of malpractice liability being imposed on Smith & Feola if the case had proceeded to trial.

**ON REMAND, THE INSURER MAY DISCOVER AND PRESENT FACTS RELEVANT TO THE CAUSE OF THE MUNZERS' LOSS FOR THE SOLE PURPOSE OF CONTESTING THE REASONABLENESS OF THE SETTLEMENT**

■ ¶ 32  Admiral asserts that it was not allowed to discover facts relating to whether the Munzers' general liability insurers refused to pay losses under the policies because Feola had delayed in making a demand for a defense and indemnity. It also argues

that the trial court erroneously refused to consider Admiral's motion for summary judgment on this issue. We agree with the Munzers and Smith & Feola that *Morris* precludes an insurer from litigating the substantive merits of a claim, as opposed to litigating coverage questions, after an insured has properly entered into a *Morris* agreement. A claimant would have no reason to enter into an agreement that would allow the insurer to defend on the merits. However, our decision regarding the invalidity of the *Morris* agreement as to the general damages issue renders Admiral's argument that the court should have considered its motion for summary judgment moot. Admiral no longer need contest that issue, and as to the remaining issue regarding the return of the fees paid to Smith & Feola, Admiral is precluded from defending on the merits because the *Morris* agreement was valid.

¶ 33 Admiral also contends that in preparation for the hearing on the reasonableness of the settlement entered against Smith & Feola, it should have been allowed to conduct discovery and then to present evidence to show that Smith & Feola's late demand was not the reason the Munzers' general liability insurers refused to indemnify the Munzers on the environmental claims. As we have observed, the test for whether a settlement is reasonable depends on an evaluation of both the liability and damages aspects of the case. Admiral specifically complains that the trial court refused to admit (1) the letters from the Munzers' general liability insurers denying coverage, (2) the pleadings in the suit the Munzers filed against their insurers, and (3) a letter that counsel for Smith & Feola wrote to the Munzers' attorney outlining why the Munzers' demand, which became the basis for the settlement, was unreasonable.

¶ 34 Consistent with our ruling above, we believe that the trial court unduly restricted the hearing regarding the reasonableness of the settlement. A knowledge of why the general liability insurers denied the Munzers' claim is important to an assessment of the liability aspect of the Munzers' malpractice claim against Smith & Feola.

¶ 35 Finally, Admiral claims that the evidence that was presented at the hearing does not support the trial court's conclusion that the settlement was reasonable and prudent. Since this matter must be remanded for further proceedings with respect to the reasonableness of the settlement, we need not address that issue.

¶ 36 The judgment of the trial court is affirmed with respect to the validity of the *Morris* agreement as to the return of attorneys' fees, reversed with respect to the validity of the *Morris* agreement relating to general damages, and this matter is remanded for further proceedings.

CONCURRING: MICHAEL D. RYAN, Presiding Judge, RUDOLPH J. GERBER, Judge.