88 P.3d 1141

Eugene WADDELL, a natural father and next friend of Carmen Jude Waddell, an incapacitated person, and Christopher Araiza, a single person, Plaintiffs–Appellees,

v.

TITAN INSURANCE COMPANY, INC., Intervenor–Appellant.

No. 1 CA–CV 01–0611.

Court of Appeals of Arizona, Division 1, Department D.

April 29, 2004.

Beale & Micheaels, P.C. By John A. Micheaels, Norman D. Hall, Jr., Phoenix, Attorneys for Plaintiffs–Appellees and Feder Law Office, P.A. By Harold, Phoenix, Feder Co–Counsel for Plaintiffs–Appellees.

Renaud, Cook & Drury, P.A. By Charles A. Struble, Christina J. Reid–Moore, Phoenix, Attorneys for Intervenor–Appellant.

## OPINION

GEMMILL, Judge.

¶1 Titan Insurance Company, intervenor below, appeals from the judgment entered by the trial court against Titan's insured, Edward Rodriguez, in favor of Eugene Waddell, natural father and next friend of Carmen Jude Waddell, and Christopher Araiza (collectively "Plaintiffs"). We affirm the judgment against Rodriguez. We also hold that Titan is entitled to challenge the reasonableness of Rodriguez's settlement with the Plaintiffs, as explained in this opinion.

## FACTS AND PROCEDURAL HISTORY

¶2 Carmen Waddell, Christopher Araiza, and Edward Rodriguez were occupants of a car involved in a single-car rollover accident. All three had consumed alcohol. None was wearing a seat belt. Plaintiffs Waddell and Araiza sustained serious injuries. Titan provided liability coverage for permissive users of the car under a minimum-limits automobile insurance policy.

¶3 After the accident, Plaintiffs claimed that Rodriguez was the driver of the car and that the accident was his fault. Plaintiffs made a demand on Titan for payment of the liability coverage policy limits within a specified period of time. Titan did not initially agree to pay its policy limits. Later, after the Plaintiffs' time limit for acceptance of the policy limits demand had expired, Titan offered its policy limits but the offer was not accepted. Plaintiffs filed suit against Rodriguez, and Titan retained counsel to represent and defend him. Titan unconditionally defended Rodriguez against the lawsuit brought by Plaintiffs until a default agreement was reached between Plaintiffs and Rodriguez.

¶4 Plaintiffs claimed that Titan, by not settling the Plaintiffs' claims for policy limits when it had the opportunity to do so, breached its duty to give equal consideration to the interests of its insured and to its own interests. Plaintiffs proposed a default agreement to Rodriguez that was accepted.[1] Rodriguez agreed to withdraw his answer, allow a default to be taken against him, and assign any claims he had against Titan to Plaintiffs. In return, Plaintiffs agreed not to execute on the anticipated judgment against Rodriguez's personal assets. Rodriguez's answer was withdrawn and default was entered against Rodriquez.

¶5 Titan requested, and was granted, leave to intervene prior to the hearing on damages. In addition to contesting damages, Titan sought to present evidence at the damages hearing regarding liability and comparative fault issues. Titan claimed that there was a dispute whether Rodriguez was driving the car at the time of the accident. Titan also asserted Plaintiffs' comparative fault in failing to wear seat belts and in getting into a car after all three individuals had been drinking. In support of its request to present evidence on these issues, Titan referenced our supreme court's explanation in *Morris* that determining the reasonableness of a settlement agreement "involves evaluating the facts bearing on the liability and damage aspects of claimant's case, as well as the risks of going to trial." 154 Ariz. at 121, 741 P.2d at 254. The Plaintiffs argued, and the court agreed, that Titan should be limited to contesting only the damages to be awarded.

¶6 Following the damages hearing, the trial court determined Carmen Waddell's damages to be $2,156,662.87 and Christopher Araiza's damages to be $264,568.12. A judgment was entered against Rodriguez that included the language of finality required by Arizona Rule of Civil Procedure 54(b).

¶7 Titan, as intervenor, appeals and raises three issues: (1) whether its insured, Rodriguez, was entitled to enter into the default agreement without breaching his duty of cooperation under the insurance policy; (2) whether the trial court erred by prohibiting Titan from presenting evidence regarding lia-

---

1. This type of agreement is referred to as a "default agreement" in this opinion. Analogous agreements have been called *Damron* agreements based on *Damron v. Sledge*, 105 Ariz. 151, 460 P.2d 997 (1969), or *Morris* agreements based on *United Servs. Auto Ass'n v. Morris*, 154 Ariz. 113, 741 P.2d 246 (1987), or *Damron/Morris* agreements as in *Himes v. Safeway Ins. Co.*, 205 Ariz. 31, 34 n. 2, ¶1, 66 P.3d 74, 77 n. 2 (App.2003); *see also Parking Concepts, Inc. v. Tenney*, 207 Ariz. 19, 20 n. 1, ¶3, 83 P.3d 19, 20 n. 1 (2004).

**532**

bility and comparative fault at the damages hearing; and (3) whether the court abused its discretion in permitting certain medical testimony at trial that, according to Titan, had not been timely disclosed.

## THE PROPRIETY OF THE DEFAULT AGREEMENT

■ ¶ 8 Ordinarily an insured defendant is prohibited by the insurance contract from making a settlement with the tort plaintiff without permission of the insurer. However, if the insurer defends while reserving the right to contest coverage or breaches one or more of its contract obligations to the insured, the insured is free to make a reasonable agreement with the tort plaintiffs and does not breach the cooperation clause of the policy by making such an agreement. *See Morris*, 154 Ariz. at 117–20, 741 P.2d at 250–53; *Arizona Property & Cas. Ins. Guar. Fund v. Helme*, 153 Ariz. 129, 138, 735 P.2d 451, 460 (1987). Titan contends that Rodriguez breached his duty of cooperation under the policy by entering into the default agreement because Titan had not violated any duty owed to Rodriguez. Titan emphasizes that it offered its policy limits and unequivocally defended Rodriguez.

¶ 9 In making this argument, Titan is essentially asking for a determination that Rodriguez breached the insurance contract and thereby voided all coverage. But Titan did not affirmatively seek this relief from the trial court prior to this appeal. The trial court did not rule on this issue, and the judgment entered against Rodriguez does not purport to adjudicate either coverage or the propriety of the default agreement.

2. Titan does not argue that evidence of comparative fault should be allowed at a default damages hearing based on traditional default law and procedure. Cf. *Postal Ben. Ins. Co. v. Johnson*, 64 Ariz. 25, 33, 165 P.2d 173, 178 (1946) (default constitutes judicial admission of well-pleaded facts in the complaint). Rather, Titan's position is based on the *Helme/Morris* line of cases establishing the need for a reasonableness hearing under certain circumstances. We note in passing that some jurisdictions have found that the advent of comparative fault has altered the traditional scope of a damages hearing following a default. See *Burge v. Mid–Continent Cas. Co.,*

¶ 10 Accordingly, the questions whether Titan breached its duty of equal consideration and whether Rodriguez breached his duty to cooperate and voided coverage by entering into the default agreement are not properly before this court, and we do not reach these issues.

## THE SCOPE OF THE DAMAGES HEARING

■ ¶ 11 Titan argues that it should have been allowed to present evidence and argument regarding liability and comparative fault issues at the damages hearing. Titan is in essence arguing that the damages hearing should have been expanded or transformed into a "reasonableness hearing" as contemplated under *Morris*.[2]

¶ 12 In *Morris*, an insured was defended by his insurer under a reservation of rights. 154 Ariz. at 116–17, 741 P.2d at 249–50. Because of the financial uncertainty created by the reservation of rights, the supreme court upheld the right of the insured to enter into an agreement with the tort plaintiff that resulted in economic protection for the insured. *Id.* at 119, 741 P.2d at 252. The agreement in *Morris* included a stipulated judgment against the insured for a specified amount of money (in contrast to the default scenario implemented in this case). *Id.* at 115, 741 P.2d at 248. The court held that the judgment would be binding and enforceable against the insurer only to the extent that the insured or tort plaintiff could prove the settlement was reasonable:

> Morris will have the burden of showing that the judgment was not fraudulent or collusive and *was fair and reasonable under the circumstances.* If Morris cannot

123 N.M. 1, 933 P.2d 210, 217 (1996) (holding that "a defaulting party admits only to the liability of his or her portion of the damages" and therefore what "must be determined after the entry of default is the dollar amount of the damages suffered by the injured party *and* the portion of those damages to be awarded against the defaulting party based upon the extent of its percentage of negligence"); *Schaub v. Wilson*, 969 P.2d 552, 558–60 (Wyo.1998) (allowing evidence of plaintiff's comparative fault); *McGarvin–Moberly Constr. Co. v. Welden*, 897 P.2d 1310, 1317 (Wyo.1995) (allowing evidence of co-defendants' comparative fault).

show that the entire amount of the stipulated judgment was reasonable, *he may recover only the portion that he proves was reasonable.* If he is unable to prove the reasonableness of any portion of the judgment, USAA will not be bound by the settlement.

*Id.* at 121, 741 P.2d at 254 (citation omitted; emphasis added).

¶ 13 In the wake of *Morris,* "reasonableness hearings" were conducted to determine the reasonableness of similar agreements. Several issues regarding the evidence that may be considered at such hearings have been addressed by our appellate courts. *See Tenney,* 207 Ariz. at 19, 20, 24–26 ¶¶ 1, 26–31, 83 P.3d at 20, 24–26; *Himes,* 205 Ariz. at 41–43, ¶¶ 32–37, 66 P.3d at 84–86; *Munzer v. Feola,* 195 Ariz. 131, 136–37, ¶¶ 31–34, 985 P.2d 616, 621–22 (App.1999). Titan claims that it should be able to test the reasonableness of the default agreement and resulting judgment.

■ ¶ 14 A liability insurer in Arizona owes two express duties and one implied duty to its insured. The express duties are the duty to defend the insured and the duty to indemnify the insured. *Mora v. Phoenix Indem. Ins. Co.,* 196 Ariz. 315, 319, ¶ 16, 996 P.2d 116, 120 (App.1999). The implied duty is the duty to treat settlement offers with equal consideration. *Id.* In response to Titan's claim that it is entitled to test the reasonableness of the default agreement, Plaintiffs initially contend that Titan is not entitled to a reasonableness hearing because Titan breached its duty to treat settlement offers with equal consideration and, according to Plaintiffs, an insurer who breaches this duty is not entitled to a reasonableness hearing. In contrast to *Morris* in which the insurer had not breached any obligation to its insured but had simply reserved its right to

contest coverage, Plaintiffs argue that if they succeed in proving that Titan breached its duty to give equal consideration to settlement offers, then Titan should be bound by the entire judgment. Whether Titan has breached its duty to Rodriguez is not an issue presented in this appeal, but we must assume the potential of such a breach in order to resolve the issues presented.[3]

¶ 15 The question whether an insurer is entitled to a reasonableness hearing, if the insurer has breached the duty of equal consideration, was squarely addressed by this court in *Himes,* 205 Ariz. at 40–41, ¶¶ 27–30, 66 P.3d at 83–84. The court considered the same argument made by Plaintiffs herein and held that an insurer that has defended its insured is entitled to a reasonableness hearing "in spite of the alleged failure to treat settlement offers with equal consideration." *Id.* at 41, ¶ 30, 66 P.3d at 84. We agree with *Himes,* and we note that this holding is also supported by *Helme,* in which our supreme court explained:

> We do not hold that the insurer's [breach] eliminates the insured's duty of cooperation so that the insured may enter into *any* type of agreement or take *any* type of action that may protect him from financial ruin. We hold only that once the insurer commits [a breach] of its policy obligations, the insured need not wait for the sword to fall and financial disaster to overtake. The insurer's breach narrows the insured's obligations under the cooperation clause and permits him to take reasonable steps to save himself. Among those steps is making a *reasonable settlement* with the claimant.

153 Ariz. at 138, 735 P.2d at 460 (third emphasis added).

---

**3.** If Titan breached its duty of equal consideration, Rodriguez's default agreement was authorized and did not void coverage. Then the issue of reasonableness of the default agreement becomes important. If it is ultimately determined that Titan did not breach its duty of equal consideration, Rodriguez's default agreement may constitute a breach of his duty of cooperation and may have voided any coverage, in which case the reasonableness of the agreement between Plaintiffs and Rodriguez will not matter. This court

in *H.B.H. v. State Farm Fire & Casualty Co.,* 170 Ariz. 324, 823 P.2d 1332 (App.1991) recognized that litigating the reasonableness of an agreement prior to determining coverage may result in unnecessary consumption of judicial and private resources: "A possible solution to avoid unnecessary litigation would be to stay the default hearing on damages until after the coverage question is resolved." *Id.* at 330, 823 P.2d at 1338. We agree with this suggestion and encourage trial judges and parties to consider this alternative.

¶ 16 Having concluded that Titan is entitled to a reasonableness hearing, we must decide what it means to test the reasonableness of an insured's agreement with the tort plaintiffs that takes the form of a default agreement. Our supreme court in *Morris* provided guidance for testing the reasonableness of similar agreements in which the parties have utilized the procedure of a stipulated judgment. The fundamental test of reasonableness is "what a reasonably prudent person in the insureds' position would have settled for on the *merits* of the claimant's case." 154 Ariz. at 121, 741 P.2d at 254. Regardless of the dollar amount of the stipulated judgment against the insured, the claimant may recover from the insurer only that portion of the judgment that is proven to be reasonable. *Id.*

¶ 17 When the settling parties have stipulated to a judgment with a specified amount of damages, it is clear from *Morris* and its progeny that an insurer entitled to test the reasonableness of the settlement may present evidence pertaining to liability, comparative fault, and damages, and the insurer may argue that only a portion of the stipulated amount was reasonable. *See id.; Himes,* 205 Ariz. at 41–43, ¶¶ 32–37, 66 P.3d at 84–86; *see also Munzer,* 195 Ariz. at 136–37, ¶¶ 31–34, 985 P.2d at 621–22. The trier of fact is required to determine the amount that is reasonable. *Himes,* 205 Ariz. at 38, ¶ 22, 66 P.3d at 81 ("This requires the finder of fact to determine a specific dollar amount as reasonable as it is an amount, not a range, that will be enforced."). The insurer will then be bound by the amount that is reasonable (assuming coverage is determined to exist). *Morris,* 154 Ariz. at 121, 741 P.2d at 254.

¶ 18 When the settling parties have chosen, as here, to implement a default agreement rather than a stipulated judgment, two as yet unresolved questions are presented: Is it the default agreement itself or the judgment resulting from the default agreement that is to be tested for reasonableness? And, if the insurer intervenes in the tort action following the default but before the damages hearing, what issues may the insurer challenge at the damages hearing? We apply the principles of *Morris* and its progeny to answer these questions and resolve this appeal.

¶ 19 The supreme court in *Morris* recognized that neither an insured seeking financial protection nor the tort plaintiffs will normally have an incentive to limit a stipulated judgment to a reasonable amount. *See id.* at 120, 741 P.2d at 253 (recognizing an insured "might settle for an inflated amount or capitulate to a frivolous case merely to escape exposure or further annoyance"); *see also Himes,* 205 Ariz. at 38, ¶ 22, 66 P.3d at 81. The court in *Morris* therefore held that the "test as to whether the settlement was reasonable and prudent is what a reasonably prudent person in the insureds' position would have settled for on the *merits* of the claimant's case." 154 Ariz. at 121, 741 P.2d at 254. Accordingly, "the primary purpose of a reasonableness hearing is to attempt to re-create the same result that would have occurred if there were an arm's-length negotiation on the merits of the case between interested parties." *Himes,* 205 Ariz. at 38, ¶ 22, 66 P.3d at 81. This includes the idea that one of those interested parties, the defendant, is going to pay the amount agreed upon in settlement. *See id.* at 39, ¶ 23, 66 P.3d at 82 ("It is what a 'reasonably prudent person' would pay from his or her own resources, assuming they are sufficient, 'on the merits' of the case.").

¶ 20 Because the reasonableness test determines the amount of money that is reasonable, in the context of a default agreement it is not simply the agreement that is to be tested for reasonableness. Rather, it is the resulting judgment against the insured that must be tested for reasonableness. Comparing the default scenario to the stipulated judgment scenario, the judgment entered after the default becomes the functional equivalent of the stipulated judgment. The test of reasonableness mandated by *Morris* and its progeny—the amount of money that reasonable people in an arms-length negotiation would settle for on the merits of the case—has no meaning if applied simply to the default agreement and not to the resulting judgment. We hold, therefore, that when the settling parties have utilized a default agreement and the insurer is entitled to

test the reasonableness of the settlement, the *Morris* test of reasonableness is to be applied to the resulting judgment, not simply the default itself. To hold otherwise would deprive the insurer of the protection mandated by our supreme court in *Morris:* the insurer, assuming coverage is established, will be responsible for only that amount determined to be reasonable.

¶ 21 When the settling parties reach a default agreement and default is entered, the insurer may seek to intervene. *See Mora,* 196 Ariz. at 319–20, ¶¶ 17–24, 996 P.2d at 120–21; *H.B.H.,* 170 Ariz. at 329–30, 823 P.2d at 1337–38; *see also Stufflebeam v. Canadian Indem. Co.,* 157 Ariz. 6, 9, 754 P.2d 335, 338 (App.1988) (deciding than an insurer that does not move to intervene or take other action may waive its right to contest coverage). In this case, Titan intervened and then sought in essence to convert the damages hearing into a reasonableness hearing. The trial court agreed with Plaintiffs that Titan could contest the damages evidence but could not offer or argue evidence of liability and comparative fault. Titan has had the opportunity to contest the amount of damages, therefore, but has not yet had an opportunity to have the *Morris* test of reasonableness applied to the judgment. Titan contends that the court erred by not allowing a reasonableness hearing rather than simply a damages hearing.

¶ 22 We conclude, however, that the trial court acted within its discretion in limiting the damages hearing to the issue of damages. Titan had not moved to amend the pleadings, nor had Titan fully complied with Arizona Rule of Civil Procedure 24(c) when it moved to intervene. Rule 24(c) specifies:

> A person desiring to intervene shall serve a motion to intervene upon the parties as provided in Rule 5. The motion shall state the grounds therefor and *shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought.*

(Emphasis added.) Because Titan did not move to amend the pleadings and did not submit an accompanying pleading with its motion to intervene, the pleadings that framed the issues before the court remained unchanged: Plaintiffs had obtained a default against Rodriguez and were entitled to proceed to a damages hearing. Under these circumstances, the court did not abuse its discretion in limiting the damages hearing to the issue of damages.

¶ 23 The trial court also possessed discretion to combine the damages hearing with a reasonableness hearing. A combined damages and reasonableness hearing would result in a damages award against the insured and a separate finding of the amount found to be reasonable under the principles of *Morris* and its progeny. Considerations of judicial economy will often support reaching the ultimate issue—the amount of a reasonable settlement under all the circumstances—directly and expeditiously. In *Anderson v. Martinez,* 158 Ariz. 358, 762 P.2d 645 (App.1988), the insured and tort plaintiff entered into a default agreement. The insurer sought to intervene prior to the damages hearing but the trial court denied intervention. *Id.* at 360, 762 P.2d at 647. This court ruled that the insurer should have been allowed to intervene to contest reasonableness:

> *Morris* holds that an insurance company must be given an opportunity to contest the reasonableness of the settlement between its insured and the plaintiffs and whether or not it was fraudulent or collusive. In the instant case *it would serve the purpose of judicial economy to permit the insurer to take this opportunity when all of the parties are involved and can present evidence to the court on the issue at one hearing.*

158 Ariz. at 363, 762 P.2d at 650 (emphasis added); *see also H.B.H.,* 170 Ariz. at 329–30, 823 P.2d at 1337–38.

¶ 24 If the insurer intervenes, as here, but the trial court limits the damages hearing strictly to the issue of damages, then the resulting judgment against the insured has not yet been subjected fully to the *Morris* reasonableness test. Titan is entitled in a future hearing to challenge the reasonableness, under the principles of *Morris* and its progeny, of the amounts awarded to Plaintiffs Waddell and Araiza. Application of the

reasonableness test may include consideration of liability and comparative fault facts and issues. *See Morris,* 154 Ariz. at 121, 741 P.2d at 254 ("This involves evaluating the facts bearing on the liability and damage aspects of claimant's case, as well as the risks of going to trial."); *Himes,* 205 Ariz. at 41–43, ¶¶ 32–37, 66 P.3d at 84–86 (listing factors that may be considered). However, because Titan has already contested the pure damages issues, such issues are not open to relitigation. *Cf. Hall v. Lalli,* 194 Ariz. 54, 57, ¶ 6, 977 P.2d 776, 779 (1999) (*Res judicata* protects parties from the burden of relitigating identical issues and promotes judicial economy.).

¶ 25 Titan appealed from a judgment against Rodriguez that contained Rule 54(b) language of finality, and proceedings involving Plaintiffs and Titan remain pending in superior court. On remand Titan may request the opportunity to further contest the reasonableness of the default agreement and resulting judgment. Alternatively, the reasonableness of the default agreement and judgment against Rodriguez may be contested in a garnishment proceeding against Titan or a separate proceeding between the parties such as a declaratory judgment action. If Titan requests the opportunity to further challenge the reasonableness of Plaintiffs' judgment against Rodriguez, we leave it to the trial court to determine, in its discretion, the procedure to be followed for the reasonableness hearing.

¶ 26 To summarize, Titan is entitled to contest the reasonableness of the settlement between Rodriguez and the Plaintiffs. In this default agreement scenario, this means that the *Morris* test must be applied to the judgment resulting from the default. The trial court acted within its discretion in limiting the damages hearing strictly to damages issues, and Plaintiffs' default judgment against Rodriguez is affirmed. In the future we encourage the consideration under similar circumstances of expanding the damages hearing to include reasonableness issues under *Morris.* Titan cannot re-litigate the to-

tal damages figures determined by the trial court, but Titan may challenge at a future hearing the reasonableness of the judgment amounts in light of liability and comparative fault considerations.[4]

## ADMISSIBILITY OF EVIDENCE REGARDING FUTURE KNEE SURGERY

■■■ ¶ 27 Titan also contends that the trial court erred in admitting, over Titan's objection, certain evidence at the damages hearing that was not previously disclosed. The specific evidence at issue is a portion of the testimony of Araiza's treating physician, Dr. Mileski. After Dr. Mileski had testified that Araiza may need future knee surgery, Titan objected when Dr. Mileski was asked when that surgery might be needed and what the cost of the surgery might be. The court overruled these objections. Titan argues that the court abused its discretion because the specific testimony had not been disclosed and Titan claims it did not have the opportunity to fully investigate Dr. Mileski's opinions and prepare a rebuttal.

■■■ ¶ 28 Titan correctly notes that we apply an abuse of discretion standard when reviewing a trial court's rulings regarding the admission or exclusion of evidence. *See Elia v. Pifer,* 194 Ariz. 74, 79, ¶ 22, 977 P.2d 796, 801 (App.1998).

¶ 29 Plaintiffs had disclosed Dr. Mileski's identity and that Araiza had suffered a severe injury to his left knee that required reconstructive surgery. The doctor was expected to testify about Araiza's prognosis and future medical treatment and expenses. Titan makes no claim of non-disclosure of these matters or of Dr. Mileski's records.

¶ 30 Dr. Mileski testified that the knee dislocation suffered by Araiza was "truly an orthopedic emergency" that required two reconstructive surgeries and could have caused him to lose his leg. As a result, Araiza was at a highly increased risk of developing fur-

---

4. We emphasize that liability and comparative fault are not, themselves, issues at such a reasonableness hearing. But considerations of liability and comparative fault may be relevant in deter-

mining the ultimate issue: the amount of a reasonable settlement under all the circumstances. *See Morris,* 154 Ariz. at 121, 741 P.2d at 254.

ther arthritis in the knee within three years and was at a high risk for needing additional future surgery. Araiza would need future treatment such as medication for inflammation and pain relief and "possible re-alignment procedures or total knee replacement." In response to a question from the court, Dr. Mileski testified that the need for total knee replacement was due both to the loss of the meniscus and the damage to the ligaments, which had to be reconstructed using cadaver tissue. This testimony was admitted without objection. Titan objected when Dr. Mileski was asked about the timing and expense of the future knee replacement surgery.

¶ 31 The trial court overruled Titan's objections, and several factors support this exercise of the court's discretion. Titan knew of the serious nature of Araiza's knee injury and knew that Dr. Mileski, his treating physician, would testify concerning Araiza's prognosis. Titan had the opportunity to depose Dr. Mileski and evidently chose not to do so. The prognosis Dr. Mileski described at trial was not out of the ordinary for a serious knee injury.

¶ 32 The cases upon which Titan relies are distinguishable. In *Jones v. Buchanan,* 177 Ariz. 410, 413, 868 P.2d 993, 996 (App.1993), one of the proposed experts had never been disclosed in writing and the other expert's opinions were not disclosed until just before trial. Neither expert was also a treating physician. *Id.* at 411, 868 P.2d at 994. In *Link v. Pima County,* 193 Ariz. 336, 339, ¶¶ 5–7, 972 P.2d 669, 672 (App.1998), the untimely expert disclosure came one month before trial and attempted to change the expert's earlier deposition testimony regarding a particular claim. Similarly, in *Zuern v. Ford Motor Co.,* 188 Ariz. 486, 488–89, 937 P.2d 676, 678–79 (App.1996), the belated disclosure of a new theory of liability was not made until one month before trial and more than three months after the deadline for disclosing expert opinions. In contrast, the asserted untimely disclosure in this case did not involve an undisclosed expert or injury or a new theory of liability or even a new theory of permanent injury.

¶ 33 The disclosure rules are designed to allow the parties a "reasonable opportunity" to prepare, "nothing more, nothing less." *Bryan v. Riddel,* 178 Ariz. 472, 476 n. 5, 875 P.2d 131, 135 n. 5 (1994). Titan was not denied a reasonable opportunity to prepare to meet the evidence of Araiza's injuries in this case. While a more complete disclosure by Plaintiffs would have been preferable, based on our review of the transcript we conclude that the trial court did not abuse its discretion in allowing Dr. Mileski to address when Araiza might expect to have knee surgery and how much it may cost.

## CONCLUSION

¶ 34 The judgment against Rodriguez is affirmed and this matter is remanded to the trial court for further proceedings consistent with this opinion.

CONCURRING: WILLIAM F. GARBARINO, Presiding Judge and CECIL B. PATTERSON, Judge.