177 P.3d 270

**Silester RIVERS, a single man, Plaintiff–Appellant,**

v.

**Stephanie Genardini SOLLEY and John Doe Solley, wife and husband, Defendants–Appellees.**

**No. 1 CA–CV 07–0100.**

Court of Appeals of Arizona,
Division 1, Department B.

Feb. 5, 2008.

Megwa Law Office By Sabinus A. Megwa, Phoenix, Attorney for Plaintiff–Appellant.

Cavanagh Law Firm By Frank M. Fox and Thomas C. Hall, Christopher Robbins, Phoenix, Attorneys for Defendants–Appellees.

## OPINION

OROZCO, Judge.

¶ 1 This is a sanctions case for an Arizona Rule of Civil Procedure 26.1 (Rule 26.1) discovery violation. Silester Rivers (Rivers) appeals the trial court's dismissal of his personal injury claim for failing to disclose the existence of a prior accident resulting in emergency room treatment. Rivers did not disclose the prior accident during discovery and never mentioned it during his Independent Medical Exam (IME), even though the prior accident caused physical complaints similar to those stemming from the accident in this case and predated it by only sixteen days. Finding no abuse of discretion, we affirm the dismissal.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 Rivers is a veteran basketball player. He played on an NCAA team and also on semi-professional or professional teams in Italy and Chile between 2000 and 2001.

¶ 3 On March 17, 2002, Rivers and his passenger were in a Pontiac Bonneville traveling eastbound on Indian School Road in Scottsdale. Stephanie Genardini Solley (Solley) was also eastbound on Indian School Road when her vehicle collided with the rear of another car that then collided with Rivers' vehicle, injuring both occupants and causing Rivers' car to rear-end another vehicle. The Scottsdale Police Department ascertained that Solley had a blood alcohol level of .124 within two hours of the accident.

¶ 4 According to Rivers' Rule 26.1 disclosure statement, he sustained back and knee injuries in the March 17, 2002 accident, including: pain and swelling of his right knee, low back pain and injury, exacerbation of a lumbar disc bulge and right hip pain. The lower back injury required epidural injections and the right knee injury required surgery. He subsequently tried out for American Basketball Association (ABA) teams in Los Angeles and Las Vegas but alleges he was unable to complete the tryouts or was physically unable to play due to the injuries he received in the March 17, 2002 accident and another car collision on March 30, 2002.

¶ 5 During discovery, Rivers disclosed the existence of the March 30, 2002 accident but not a collision that occurred on March 1, 2002. An accident report indicates that Rivers' vehicle "spun out" and collided with another vehicle in the March 1, 2002 incident, resulting in his receiving three citations. The accident sent Rivers to the emergency room, where he told physicians he was suffering back pain he rated 8 on a scale of 10, with numbness in his leg. At the emergency room, Rivers received pain medication as a result of this accident.

¶ 6 At his deposition on December 9, 2004, Rivers testified that he had been in only two

car accidents previous to March 17, 2002: one in February 1996 and one in January 1999. According to the IME report, Rivers indicated to Dr. Hartzler that he had not been in any prior accidents, although his records reflected otherwise. The IME report does not indicate whether Rivers experienced knee problems between his 1999 surgery and the March 17, 2002 accident. Rivers evidently told his own doctor that he had one prior injury and experienced no knee problems between the 1999 surgery and the March 17, 2002 accident, and nowhere in his answers to interrogatories did Rivers disclose the March 1, 2002 accident. Also, Rivers never produced any records concerning the March 1, 2002 accident, and his Rule 26.1 Disclosure Statement is devoid of any reference to it.

¶ 7 Discovery did reveal that, prior to the March 17, 2002 accident, Rivers underwent arthroscopic surgery on both knees due to basketball-related injuries. The record indicates that, by 2001, Rivers had low back pain, paraesthesias of the right lower extremity, and mild and broad disc bulges in his spine. Further, an MRI of his right knee revealed joint effusion with chrondomalacia of the patella femoral joint. This was the same knee operated on several months after the March 17, 2002 and March 30, 2002 accidents.

¶ 8 In June 2006, Rivers attended an uninsured motorist arbitration based upon the March 30, 2002 accident. A witness for Rivers, Dr. Patchen, opined during the arbitration that he could not determine whether it was the March 17th or the March 30th accident that had necessitated surgery, yet the prior disclosures indicated that Dr. Patchen attributed the need for surgery to the March 17, 2002 accident. Solley's counsel learned about the March 1, 2002 accident after subpoenaing the American Family Insurance file on the arbitration, which arrived in defense counsel's office on July 17, 2006. Defense counsel was out of town at that time and did not review the file until July 24, 2006.

¶ 9 A three-day jury trial was to commence on July 25, 2006. On that day, Solley's counsel moved to dismiss, or alternatively to continue the trial, based upon Rivers' failure to disclose the March 1 accident. The trial court found that the fault lay with Rivers and a witness who failed to comply with the defense's request for records. The court scheduled briefing on whether the disclosure violation warranted dismissal.

¶ 10 After briefing, an evidentiary hearing was held and Rivers testified. The trial court subsequently ordered the case dismissed. This appeal followed. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) section 12–2101(B) (2003).

## DISCUSSION

### I.  The Dismissal

¶ 11 On appeal from a dismissal based upon discovery violations, we will affirm a trial court's order unless the record reflects a clear abuse of discretion. *Wayne Cook Enter., Inc. v. Fain Prop. Ltd. P'ship*, 196 Ariz. 146, 147, ¶ 5, 993 P.2d 1110, 1111 (App.1999). "The trial court's discretion in dismissing a case for discovery violations 'is more limited than when it employs lesser sanctions.'" *Id.* (quoting *Lenze v. Synthes, Ltd.*, 160 Ariz. 302, 305, 772 P.2d 1155, 1158 (App.1989)).

¶ 12 Rivers argues that: (1) the sanction of dismissal is not warranted under the circumstances, and (2) the trial court abused its discretion and failed to follow the *Wayne Cook* procedures in not considering lesser sanctions. We address these arguments in turn.

### A.  Rivers' Actions

¶ 13 The trial court found that Rivers knowingly and continuously failed to disclose the March 1, 2002 accident during discovery. Under Rule 37(d) of the Arizona Rules of Civil Procedure:

> A party's or attorney's knowing failure to timely disclose damaging or unfavorable information shall be grounds for imposition of serious sanctions in the court's discretion up to and including dismissal of the claim or defense.

The Arizona Supreme Court directs that, whenever possible, the disclosure rules "should be interpreted to maximize the likelihood of a decision on the merits." *Allstate*

*Ins. Co. v. O'Toole,* 182 Ariz. 284, 287, 896 P.2d 254, 257 (1995). Courts should also use a common sense approach in applying the rules, *id.,* and any sanctions "must be appropriate, and they must be preceded by due process." *Montgomery Ward & Co. v. Superior Court,* 176 Ariz. 619, 622, 863 P.2d 911, 914 (App.1993). The extreme sanction of dismissal requires an evidentiary hearing and "is warranted only when the court makes an express finding that a party, as opposed to his counsel, has obstructed discovery, . . . and that the court has considered and rejected lesser sanctions as a penalty." *Wayne Cook,* 196 Ariz. at 149, ¶ 12, 993 P.2d at 1113.

¶ 14 Following these procedures, the trial court expressly found that the client's failure to disclose was intentional and not the result of any misconduct by his attorney. Indeed, Rivers never voluntarily disclosed the March 1, 2002 accident. It came to light only because another attorney litigating another case arising out of another accident involving Rivers discovered a record revealing the accident. Defense counsel became aware of the prior accident only when reviewing the arbitration file in that other matter. The disclosure came to light shortly before trial and, therefore, a brief continuance could not have cured the resulting prejudice.

■ ¶ 15 The trial court's findings included an express credibility determination: "Plaintiff's varying answers to questions on cross at the evidentiary hearing concerning his failure to disclose the accident at his deposition damaged his credibility." Rivers alternatively testified that he had forgotten the accident, was not asked sufficiently specific questions to warrant its disclosure, and "it had no relevance." The trial court found these shifting explanations fundamentally inconsistent. Rivers disputes the court's finding that he intentionally failed to disclose the accident, but when the trial court provides findings on discovery issues, we owe them "great deference." *Montgomery Ward,* 176 Ariz. at 622, 863 P.2d at 914.

¶ 16 Assuming *arguendo* that Rivers had forgotten about the March 1, 2002 accident, the arbitration hearing occurred less than six weeks prior to the start of trial and should have refreshed his memory. Nevertheless, Rivers made no effort to seasonably amend his disclosures to include the March 1 accident. *See* Ariz. R. Civ. P. 26.1(b)(2) ("The duty [to disclose] shall be a continuing duty, and each party shall make additional or amended disclosures whenever new or different information is discovered or revealed. Such additional or amended disclosures shall be made seasonably, but in no event more than thirty (30) days after the information is revealed to or discovered by the disclosing party.")

■ ¶ 17 A court may find good cause for the failure based upon the party's inadvertence, prejudice to either side, any action to resolve the dispute and the overall diligence in prosecuting or defending the case. *Allstate,* 182 Ariz. at 287–88, 896 P.2d at 257–58. In *Allstate,* for example, even though the plaintiffs had failed to file a Rule 26.1 disclosure statement, no trial date had been set and the missed deadlines were harmless, so the supreme court remanded the case for reevaluation under principles it had articulated. *Id.* at 288–89, 896 P.2d at 258–59.

¶ 18 However, none of these factors aids Rivers. The court's express findings state that his action was willful, the damage to the defense was prejudicial and the late arrival of the evidence precluded any meaningful action by counsel to resolve the problem. As the *Allstate* court pointed out, delay when no trial has been set "clearly may be less prejudicial than that resulting from an attempt to disclose new witnesses just before trial." *Id.* at 288, 896 P.2d at 258. In this case, the failure to disclose came to light on the morning of trial and a jury had been called, leaving Solley with no meaningful opportunity to incorporate the information into her defense.

¶ 19 Rivers also argues that the dismissal of the action was unwarranted pursuant to our decision in *Zimmerman v. Shakman,* 204 Ariz. 231, 62 P.3d 976 (App.2003). In that case, we reversed the grant of a motion in limine that effectively dismissed the plaintiff's case because the trial court failed to conduct an evidentiary hearing to assess whether the plaintiff or his attorney was to blame for the alleged disclosure violation. *Id.* at 237, ¶ 23, 62 P.3d at 982. Additionally,

the trial court failed to make specific findings as to what evidence had not been disclosed and did not consider lesser sanctions. *Id.* Based upon the plaintiff's prior disclosures in a pretrial statement and the supplemental list of witnesses, we found that "[t]rial could have proceeded, limited only to that evidence." *Id.* at ¶ 22.

¶ 20 This case differs markedly from *Zimmerman.* The trial court conducted an evidentiary hearing and made the requisite findings that the client was at fault. Moreover, the procedural posture is not comparable. Whereas the disclosure violation here came to light shortly before trial, *Zimmerman* concerned a pre-trial motion in limine relating to a trial that never occurred. *Id.* at 236, ¶ 18, 62 P.3d at 981. We found that, based upon earlier disclosures, the trial court was not bound by an earlier order barring the plaintiff from introducing evidence, *id.,* and a trial could have been held. *Id.* at 237, ¶ 22, 62 P.3d at 982. In this case, however, Solley's counsel would have had to revamp its defense in light of the newly discovered prior accident. Although Rivers contends that the defense and a doctor were aware that he had prior injuries, the injuries he disclosed were temporally remote from the March 17, 2002 accident.[1]

¶ 21 Equally misplaced is Rivers' reliance upon *Waddell v. Titan Ins. Co.,* 207 Ariz. 529, 88 P.3d 1141 (App.2004). In *Waddell,* the defendant objected to previously undisclosed testimony regarding the plaintiff's possible need for surgery and that surgery's cost. *Id.* at 536, ¶ 27, 88 P.3d at 1148. The plaintiff had disclosed the doctor's identity and the injury, and the defense chose not to depose the doctor even though counsel knew that the witness would testify regarding the plaintiff's prognosis. *Id.* at 536–37, ¶¶ 27–31, 88 P.3d at 1148–49. We held that a more complete disclosure would have been preferable, but the defense was not denied a reason-

able opportunity to prepare for trial. *Id.* at 537, ¶ 33, 88 P.3d at 1149.

¶ 22 What Rivers fails to acknowledge is our qualifying statement in *Waddell* that "the asserted untimely disclosure ... did not involve an undisclosed expert *or injury* or a new theory of liability...." *Id.* at ¶ 32, 88 P.3d 1141 (emphasis added). This case does involve an undisclosed injury and accident. Because the prior accident came to light immediately before trial, Solley had no fair opportunity to incorporate it into her defense. Moreover, the existence of the March 1 accident was substantial evidence, not an insignificant incident as Rivers would have it.

■ ¶ 23 A recurring theme in Rivers' briefs is that he authorized others to make the required disclosures and thus is not to blame if they failed to fully comply. He likewise blames opposing counsel for not pursuing more discovery and being out of town the week before trial. However, Rivers fails to acknowledge that the obligation to disclose under Rule 26.1 and the related discovery rules falls squarely on him and is non-delegable.[2]

### B. Lesser Sanctions

¶ 24 Rivers further contends that the trial court did not comply with the *Wayne Cook* requirements. As we stated earlier, Courts should also use a common sense approach in applying the rules, *id.,* and any sanctions "must be appropriate, and they must be preceded by due process." *Montgomery Ward,* 176 Ariz. at 622, 863 P.2d at 914. It is undisputed, however, that this case satisfied the basic due process standard. The trial court held an evidentiary hearing preceded by briefing before imposing the sanction. Rivers and his attorney testified and the trial court entered detailed findings. Rivers contends, however, that reversal is required be-

---

1. Rivers maintains that withholding the prior accident evidence was not prejudicial because the "IME expressly considered, and rejected, the theory that the [c]rash exacerbated [River's] disclosed preexisting back condition." The record indicates that Rivers never disclosed the prior accident during the IME. We are unwilling to assume that a physician would not alter his or her analysis when informed of an accident pre-

dating the March 17 accident by sixteen days and resulting in a pain level of 8 on a scale of 10.

2. Notwithstanding Rivers' protests, the record does not support any effort by defense counsel to trip up Rivers with a technicality or engage in other "hardball" litigation tactics. *See Allstate,* 182 Ariz. at 287–88, 896 P.2d at 257–58.

cause the trial court failed to consider lesser sanctions.

¶ 25 Contrary to Rivers' allegations, the trial court did consider the options available short of dismissal, even before conducting the evidentiary hearing:

THE COURT: I understand that. And I'm considering a range of——I'm considering a range of sanctions that I'm required to consider under the *Zimmerman* case right now, anything ranging from dismissal to exclusion of Dr. Hatfield to continuance. And I'll tell you right now I'm loathe to consider a continuance when this arises on the day of trial. I believe that the Court's opinion in *Zimmerman* supports that view. But there has clearly been a significant and prejudicial failure to disclose in this case; not only disclosure but discovery. I'll note for the record now, as *Zimmerman* requires us to consider, that the fault in the nondisclosure appears to lie in two places, neither of them with counsel.

First, the fault appears to lie with plaintiff himself, and that he was present at an accident, sought medical treatment in a time frame quite near to that at issue in this case and never disclosed it and never testified to it.

Second failure of disclosure appears to be with the witness's own compliance with the discovery request from the defense.

I'm not faulting you, [Rivers' counsel], for any of those; but I will invite your comments on, first of all, whether you believe there is any argument that defense hasn't been prejudiced by these failures to disclose, and secondly, if I were to impose a sanction of the exclusion of Dr. Hatfield, whether such a sanction would be tantamount to a dispositive sanction.

¶ 26 After conducting the evidentiary hearing and reviewing the briefs, the trial court expressly found that lesser sanctions would be inadequate. Granting a continuance would have required the court to reschedule trial after the jurors had already appeared for the first trial. Moreover, after two and a half years of litigation, the defense would have had to redo its preparation of experts and the IME. The prejudice was simply too

strong. *See Allstate,* 182 Ariz. at 288, 896 P.2d at 258 (noting that the relevant question is the harm caused to the opponent or the justice system).

¶ 27 This result is not inconsistent with *Zimmerman.* As we explained in that case: "[I]f a trial is set and imminent, the possibility of prejudice increases. In such a case the trial judge possesses considerable latitude in determining whether good cause has been shown for late disclosure." *Zimmerman,* 204 Ariz. at 236, ¶ 16, 62 P.3d at 981.

## CONCLUSION

¶ 28 In light of the trial court's findings and the latitude owed to the court, we affirm the trial court's rulings and dismissal. Solley requests that we award her attorneys fees and costs pursuant to Arizona Rule of Civil Procedure 37(c)(1). In our discretion, we deny Solley's request for attorneys' fees; however, she is entitled to costs incurred on appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21.

CONCURRING: DANIEL A. BARKER, Presiding Judge, and ANN A. SCOTT TIMMER, Judge.

